610 So.2d 986 (1992)
Ervin Joseph BERGERON
v.
SOUTHEASTERN LOUISIANA UNIVERSITY.
No. 92CA0830.
Court of Appeal of Louisiana, First Circuit.
November 20, 1992.
Gordon Matheny, Hammond, for plaintiff-appellee.
Tom Matheny, Hammond, for defendant-appellant Southeastern Louisiana Univ.
Before WATKINS, CRAIN and GONZALES, JJ.
CRAIN, Judge.
Southeastern Louisiana University ("Southeastern") appeals a judgment of the district court which awarded the plaintiff, Ervin Bergeron, $35,000 for damages sustained in a slip and fall accident which occurred in the lobby of his dormitory. We amend and affirm the judgment of the district court.
On appeal the defendant raises five assignments of error concerning the issues of liability and quantum.
The facts, as revealed by the record[1], are as follows:
On March 23, 1987, Ervin Bergeron, a 26 year old student at Southeastern had arranged *987 to be tutored in mathematics by a fellow student, Suzette Burks.
The plaintiff and Burks each lived in the Holloway Smith Dormitory on the university campus. The building in question is a two story "L" shaped structure with the lobby situated in the center of the "L", and two doors leading to it. The lobby is a room of approximately 40' × 40' in dimension, with a 3 foot raised portion. The lobby floor is comprised of a substance which is akin to marble in hardness. The lobby houses couches, pool tables, drink machines and a monitor's desk are enclosed by a glass window, which desk is located 25 to 50 feet from the door. The student rooms are connected to the lobby by covered open air walkways.
At approximately 7 p.m., on the night in question, Bergeron had checked into the dormitory and left his identification at the front desk in order that he could enter Ms. Burks' room. The pair studied for approximately an hour and a half. Upon completion of the tutoring session, Bergeron and Burks walked together under the covered walkway to the lobby. Although it was not raining when the plaintiff originally entered the lobby, it had been raining for about an hour by the time the pair left Ms. Burks' room and reentered the lobby. The walkways leading to the lobby were wet. Plaintiff entered the lobby first, followed by Ms. Burks. As he entered the lobby Bergeron, who was wearing rubber thong shoes, slipped, fell on his back, and struck his head on the floor.
At the time of the accident there were no warning signs, no mats on the floor, and no visible mops and buckets. The testimony indicates that generally the procedures were to post signs, place mats on the floor and mop the wet areas during a period of rain.
The incident was witnessed by Ms. Burks and Ed Clites, a personnel assistant on duty that night. These parties came to Bergeron's aid after the accident. Clites retrieved a blanket and pillow for the plaintiff. He also cleared the lobby, locked the doors and summoned the police. He then went to the resident manager's office to complete a report of the incident.
The campus police arrived in about 15 minutes. After their arrival the ambulance was called and it arrived about 20 minutes thereafter. The plaintiff was taken to Lallie Kemp Hospital where he was x-rayed, treated and released.
Bergeron had pain in his head, elbow, low back and tailbone. He also had headaches and trouble sleeping. He stayed in bed and would attend class with the aid of crutches, when possible. At the time of the accident, approximately two months were left for completion of that semester. According to Bergeron, he became involved in an automobile accident on September 23, 1987, and sustained additional injuries, including further injuries to his back. He had been maintaining his campus job as the activity co-ordinator, with some difficulty, after the slip and fall accident. However, after the auto accident, he could no longer attend to these duties. He remained in school until the end of the semester but did not return thereafter.
Following this incident, the plaintiff was treated by Dr. David Jarrott, a neurosurgeon.
He was first seen by Dr. Jarrott on May 12, 1987, at which time he complained of headaches, low back pain, left hip and leg numbness related to the fall of March 23, 1987. He manifested limited motion, muscle tenderness without spasms and reflexes that were less active than normal. His neurological tests were normal. Dr. Jarrott diagnosed the plaintiff's condition as being a lumbar strain.
The plaintiff was next seen by Dr. Jarrott on August 6, 1987. His complaints were basically the same as on his first visit. Plaintiff's CAT scan of July 9, 1987, was normal. He was told to lose weight.
Dr. Jarrott found that the plaintiff continued to suffer from a lumbar strain of moderate severity. There was injury to the lumbar nerve on the left side with pain radiating into the leg, but there was no nerve compression.
*988 Plaintiff was next seen on September 2, 1987, and he complained of backache and left leg pain. He was given muscle relaxants and again told to lose weight. Dr. Jarrott postulated that the plaintiff would recover satisfactorily but his obesity would cause him to be symptomatic for 6 more months.
The plaintiff was again seen by Dr. Jarrott on October 21, 1987, at which time Bergeron reported having been involved in an auto accident wherein he sustained a nerve compression of the right C6, a chronic lumbar strain and a cervical and disc syndrome. According to Dr. Jarrott the plaintiff's last two visits before the auto accident reflected little or no objective symptoms.

Liability
The defendant's first three assignments of error concern the issue of liability.
Defendant, in his first assignment of error, argues that the trial court erred in finding the University was negligent.
The trial court, in its reasons for judgment stated its findings on the issue of the defendant's liability as follows:
... [d]efendant Southeastern Louisiana University through its employees was negligent in not maintaining the entrance of its building in a safe condition. Even though it had been raining for some time, the mats which were readily available were not placed at the entrance, nor were safety measures taken.
A reviewing court will not set aside the factual determinations made by the trial court unless they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978); Lirette v. State Farm Ins., 563 So.2d 850 (La., 1990).
This action was brought under the theories of strict liability and negligence. La. C.C. Arts. 2315, 2317. In discussing the difference between these two theories of negligence, the Louisiana Supreme Court in Oster v. Department of Transportation and Development, 582 So.2d 1285 (La., 1991) stated:

LEGAL PRINCIPLES
Plaintiff brought this suit essentially under negligence and strict liability theories. Although the two theories constitute separate and distinct avenues for relief for damages resulting from a dangerous condition on land, the analysis that courts utilize when applying the two theories is similar. Under either theory, the plaintiff must prove 1) the thing which caused the damage was in the custody of the defendant; 2) the thing contained a `defect' (i.e., it had a condition that created an unreasonable risk of harm to the plaintiff); and 3) the `defective' condition of the thing caused the plaintiff's injuries. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106 (La.1990). In essence, the only difference between the negligence theory of recovery and the strict liability theory of recovery is that the plaintiff need not prove the defendant was aware of the existence of the `defect' under a strict liability theory. Under the negligence theory, it is the defendant's awareness of the dangerous condition of the property that gives rise to a duty to act. Under a strict liability theory, it is the defendant's legal relationship with the property containing a defect that gives rise to the duty. Loescher v. Parr, 324 So.2d 441, 446 (La.1976). Under both theories, the absence of an unreasonable dangerous condition of the thing implies the absence of a duty on the part of the defendant. 582 So.2d 1285 at 1288 (1991). (Footnotes deleted)
In this case there was testimony to the effect that rain had occurred intermittently throughout the day and most recently an hour before this incident. The lobby had been wet earlier in the day. A monitor was stationed in the lobby to protect against just such conditions. At the time of the accident the lobby was free of warning signs. There were no mats on the floor in this well-trafficked, slippery lobby area. Although the mats had previously been used by the school inside and outside the dormitory area; in this instance, the mat had either been resting on the banister *989 railing or fallen on the floor. Moreover, although evidence was presented that it was normal procedure for mopping to occur if any amount of water accumulated on the floor; at this time no mopping took place. As such, in this case the criterion for a finding of negligence has been met. That is, the lobby floor was in the custody of the University. It contained a defect (i.e., rain/water) that created an unreasonable risk of harm to the plaintiff. It was this rain slick surface of the floor that caused plaintiff's injuries. Due to the campus monitor stationed in the lobby area the university knew of or should have known of the dangerous condition, and failed to implement its normal procedure to ward against the dangerous condition.
Under these circumstances the trial court correctly found that the defendant was negligent in not maintaining the entrance of the building in a safe condition. We find no error in this regard.
In Assignments of Error Nos. 2 and 3 the defendant contends that the trial court erred in failing to find defendant contributorily negligent and failing to find a percentage of fault.
The defendant argues that the actions of the plaintiff in wearing "flip-flops", especially in light of the monitor's admonition, constituted negligence on his part, for which an assessment of fault should have been made. We agree.
The record reflects that on the date in question the plaintiff was wearing rubber "flip-flop" shoes when he slipped on the wet dormitory floor. This fact was admitted by the plaintiff and corroborated by Suzette Burks, who followed the plaintiff into the dormitory. Coleene Town and Ed Clites also testified that they saw the plaintiff shortly after the accident and he had been wearing "flip-flops."
Additionally, according to Roland Jackson, the dorm's resident manager, he had twice warned the plaintiff not to wear flip-flops in the lobby. Roland Jackson described these shoes as "worn and dangerous".
Moreover, it is clear from the record that the plaintiff was familiar with the dormitory because he resided there and had been a student at the University for two semesters.
Mr. Bergeron also admitted that he knew it had been raining for about an hour before he re-entered the lobby area. He testified that since he fell at the main entrance to the lobby that it was normal for tracts of rainwater to accumulate there, since he had seen such wetness there before.
This evidence clearly supports a finding of negligence on the plaintiff's part. The failure of the trial judge to make such a finding in view of the evidence is clearly wrong. For these reasons we find the plaintiff 40% negligent and we amend the judgment accordingly.

DAMAGES
In Assignments of Error 4 and 5 the defendant alleges that the trial court's damage award was excessive and the court erred in not taking into account the plaintiff's failure to minimize his damages by modifying his condition of obesity.
In assessing damages, much discretion is left to the trial judge. Perniciaro v. Brinch, 384 So.2d 392 (La., 1980). Before an appellate court will disturb such an award, the record must clearly reveal that the trier of fact abused his discretion in making the award, based upon the particular injuries and their effect upon the particular individual who sustained the injuries. Perniciaro v. Brinch, supra; Reck v. Stevens, 373 So.2d 498 (La., 1979). As previously discussed, in the present case, plaintiff suffered a lumbar strain of moderate severity. There was minimal circumferential bulging of the disc material, but no rank herniation. The plaintiff suffered from headaches, low back pain and numbness in the hip and left leg.
He was first seen at the emergency room of Lallie Kemp Hospital, x-rayed, treated and released. He was ambulatory with the aid of crutches and with a walker. Thereafter, he was treated by Dr. David Jarrott, *990 for his injuries. His term of treatment lasted from May 12, 1987 through October 21, 1987, at which time an intervening accident resulted in his former symptoms becoming "overwhelmed". Dr. Jarrott prescribed muscle relaxants and instructed the plaintiff to lose weight. Dr. Jarrott felt that the plaintiff's injuries would last an additional 6 months because his obesity complicated his condition.
As a result of his condition, plaintiff had grave difficulty in attending classes and securing medicine and his meals. He missed a number of classes and sought the aid of fellow students in getting medicine and meals. He eventually left school for two years after this semester, although it is unclear how instrumental this accident was in that decision. He worked, in great discomfort, at his on-campus job, wherein he earned $3.35 per hour. He eventually lost this job after his auto accident.
He related that he experienced trouble sleeping for a period of approximately three weeks.
Additionally he was restricted by his injuries from participating in his former extra-curricular activities such as theater, bowling and biking.
Considering the moderate lumbar strain and the impact these disabling injuries had on the plaintiff in his everyday and extracurricular life, as well as their effect upon his educational process, we cannot say that the trial court judge's award of $35,000 for general damages in this case was an abuse of discretion.
Finally, defendant contends that the trial court erred in not taking into account the plaintiff's failure to minimize his damages by modifying his condition of obesity.
In Aisole v. Dean, 574 So.2d 1248 (La., 1991) the Louisiana Supreme Court discussed such an issue but nonetheless decided to allow the damage award to stand in that case. In Aisole, id., 1253-1254, the Court stated:
It is a well-established principle of law that a tortfeasor takes his victim as he finds him and although the damages caused are greater because of the victims' prior condition which is aggravated by the tort, the tortfeasor is nevertheless responsible for the consequences of his tort. Thames v. Zerangue, 411 So.2d 17, 19 (La.1982); Walton v. William Wolf Baking Co., Inc., 406 So.2d 168, 175 (La. 1981). Our jurisprudence has also recognized that an injured plaintiff has a duty to take reasonable steps to mitigate damages. Pisciotta v. Allstate Ins. Co., 385 So.2d 1176, 1182 (La.1979); Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064, 1071 (La.App. 1st Cir.1983), writ denied, 433 So.2d 1056 (La.1983); Reeves v. Louisiana and Arkansas Railway Co., 304 So.2d 370, 375 (La.App. 1st Cir.1974), writ denied, 305 So.2d 123 (La.1974). Reading these two doctrines together, we conclude that although a tortfeasor takes his victim as he finds him at the time of the injury, after that time, the victim has an affirmative responsibility to make every reasonable effort to mitigate damages.
Our decision regarding this issue of first impression is consistent with the court's holding in Muller v. Lykes Bros. Steamship Co., 337 F.Supp. 700 (E.D.La. 1972), aff'd, 468 F.2d 951 (5th Cir.1972), in which an obese plaintiff's recovery was diminished because he neglected his duty to mitigate damages by failing to follow medical advice that he reduce his weight.
Although we acknowledge the applicability of the doctrine of mitigation of damages in the instant case, our review of the record reveals the trial court's award of $55,000 for pain and suffering is not excessive under the circumstances. Accordingly, we find no reason to lower the $55,000 awarded to Mrs. Aisole for pain and suffering. (Footnotes deleted)
In the instant case the trial judge, in his reasons for judgment made specific mention of the plaintiff's obesity and its deleterious effect upon his recovery. We, therefore, have no reason to believe that he did not take this factor into account in setting the award of general damages in this case. This assignment lacks merit.
For the reasons assigned the judgment to the trial court is amended to assess 40% *991 of the liability against the plaintiff. The judgment as amended is affirmed. Costs are to be shared by the parties.
AMENDED AND AFFIRMED.
GONZALES, J., concurs.
NOTES
[1] This case was submitted by stipulation, on the basis of depositions, medical records and reports.