692 So.2d 1334 (1997)
William AYCOCK, Plaintiff-Appellee,
v.
GULF COAST TRANSPORTATION, INC., et al., Defendants-Appellants.
No. 96-1471.
Court of Appeal of Louisiana, Third Circuit.
April 2, 1997.
David Carlton McMillin, Monroe, Keith Edward Thibodeaux, St. Martinville, for William Aycock.
*1335 Charles Andrew O'Brien, Baton Rouge, for Gulf Coast Transp. Inc., et al.
Before DECUIR, AMY and GREMILLION, JJ.
DECUIR, Judge.
This appeal arises out of a vehicular accident on July 28, 1991, on Interstate 10 in St. Martin Parish, Louisiana. Prior to trial by jury, defendants, Ronnie L. Moye, Gulf Coast Transportation, Inc., and its insurer, Vanliner Insurance Company, stipulated to liability. The jury returned a verdict awarding the plaintiff, William Aycock, a total of $200,000.00 in damages, including $170,000 in general damages, $3,000.00 in lost wages, $12,000.00 in past medical expenses, and $12,000.00 in future medical. The jury award also included an award of $3,000.00 for loss of personal property and affects. The jury rejected plaintiff's claim for future loss of earnings.
Plaintiff filed a motion for judgment notwithstanding the verdict, or alternatively, for an additur, or alternatively, for new trial on the grounds that the jury failed to make an award of future lost earnings and loss of earning capacity and made an insufficient award for lost wages. The trial judge granted an additur with regard to future loss of earnings and/or earning capacity in the amount of $345,566.00. However, the trial judge further ordered defendants to make a declaration in the suit record as to whether they would accept the additur and; if not, the court would order a new trial solely on the issue of loss of future earnings and/or loss of earning capacity. Defendants rejected the additur, and the matter was tried a second time on the sole issue of loss of future earnings and/or earning capacity. The second jury awarded $50,000.00 in future loss of earnings and/or earning capacity.
Defendants appeal the award for general damages and future medical expenses made in the first trial, the trial judge's additur, and the award of $50,000.00 in future loss of earnings made at the second trial.
Plaintiff appeals the first jury award of $3,000.00 in lost wages, the second jury award of $50,000.00 for loss of future earnings and/or earning capacity, and the trial judge's award of $500 in expert fees for Dr. Randolph Rice.

General Damages
Prior to the accident, plaintiff was employed as an operations manager, an administrative position with an oil field related company. His work experience prior to the accident was mainly in sales, which involved calling on customers and office work.
The first jury awarded the plaintiff a total of $170,000.00 in general damages. As a result of the accident, Aycock was hospitalized for four days. He was seen in the emergency room by Dr. Louis Mes, plastic surgeon, who sutured a head wound under local anesthetic. Because plaintiff complained of neck stiffness, Dr. Mes consulted Dr. Gregory Gidman, an orthopedist. Dr. Gidman diagnosed a significant cervical strain at C3-C4, a soft tissue injury. Dr. Gidman next saw plaintiff on August 16, 1991, at which time his diagnosis remained the same. Dr. Gidman did not see Aycock again until January 6, 1992, at which time plaintiff complained of pain between the shoulder blades going up into the neck area. Dr. Gidman last saw plaintiff on January 27, 1992, at which time he complained of twinges of pain in the neck going up to the back of the skull. Dr. Gidman noted that Aycock continued with his work in sales in the oil field equipment business. Dr. Gidman was of the opinion that plaintiff could continue with his regular employment, and he did not think that plaintiff was going to have any permanent impairment. Furthermore, Dr. Gidman imposed no activity restrictions.
Plaintiff was referred by his attorney to Dr. John Cobb, an orthopedic surgeon. Plaintiff first saw Dr. Cobb on May 1, 1992. At that time, Aycock was employed in a sales position. Plaintiff complained of neck pain, pain from the neck to the head, pain between his shoulder blades, and a popping or cracking sensation in the neck upon movement. Dr. Cobb's diagnosis was post-traumatic cervical pain syndrome. Dr. Cobb saw plaintiff again on September 21, 1992, at which time Aycock again complained of neck pain and cracking sensation in the neck from time to time. X-rays revealed spondylosis, a degenerative *1336 condition in the lower cervical area, which Dr. Cobb described as narrowing of disc spaces, some calcification of ligaments, and spur formation. Dr. Cobb recommended conservative treatment.
Plaintiff returned to see Dr. Cobb on October 19, 1992, complaining of headaches and a popping episode in the neck. When asked by plaintiff on this visit if he could assume heavy-duty work activity, Dr. Cobb advised plaintiff that he would be more suited for light to medium work activity.
Dr. Cobb next saw plaintiff on October 4, 1993, complaining of central neck pain and some degree of popping. His diagnosis remained the same. Plaintiff was next seen by Dr. Cobb on July 25, 1994. No other treatment was recommended at that time. Plaintiff returned to Dr. Cobb on August 2, 1995, complaining of pain in the base of the neck radiating to the head. On this visit, Dr. Cobb noted on x-ray a new finding of degeneration at different levels, C5-6 and C4-5. The degenerative changes noted in 1993 were predominantly at the C6-7 level. Dr. Cobb estimated a ten (10%) percent total body impairment due to the neck injury.
In addition to the cervical injury, plaintiff contends that he suffers from post-traumatic anxiety disorder. Plaintiff was seen by Dr. Edwin Johnstone, a psychiatrist, and Dr. Warren C. Lowe, clinical psychologist, who both testified that as long as plaintiff continues to experience physical pain, he would continue to suffer psychological effects related to the accident.
The general damage award of $170,000.00, includes the sum of $60,000.00 for past and future physical pain and suffering, $35,000.00 for past and future mental pain and anguish, and loss of enjoyment of life, and $75,000.00 for permanent and physical disability and bodily injury. The discretion vested in the trier of fact is great and even vast, so that an appellate court should rarely disturb an award on general damages. In determining whether an abuse of discretion occurred, this court must look first to the individual circumstances of the case, not to prior awards. Reck v. Stevens, 373 So.2d 498 (La.1979); Stevens v. Hartford Ins. Co. of Midwest, 94-523 (La.App. 3 Cir. 11/2/94); 646 So.2d 981, writ denied, 95-0311 (La.3/24/95); 651 So.2d 296.
There was evidence presented that plaintiff's injury is permanent; that he suffers chronic pain and will likely continue to suffer from his cervical injury; and that he will continue to experience psychological effects from his injury. Based upon the evidence, we affirm the general damage award of $170,000.00.

Future Medical Expenses
The jury awarded future medical in the amount of $12,000.00. We find no abuse of the jury's discretion and affirm the award for future medical in the amount of $12,000.00.

Loss of Future Earnings and Earning Capacity
The jury at the first trial considered but did not award future lost earnings and/or lost earning capacity. A plaintiff who seeks to recover for loss of earning capacity must prove that the injuries sustained have incapacitated him from, in the future, doing work of a reasonable character, that is, work for which he was fitted by training and experience, of the same or similar kind in which he was engaged at the time of the accident. Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968); Green v. Industrial Helicopters, Inc., 560 So.2d 684 (La.App. 3 Cir. 1990).
The record reflects that plaintiff returned to his previous employment after his accident; however, due to staff reductions, plaintiff was told by his employer he would be required on occasion to go offshore. Aycock declined to go offshore allegedly because the work would require heavy manual labor. Instead, Aycock offered himself to his employer as a contract commissioned salesman. His employer accepted Aycock's proposal, which later proved to be nonprofitable for Aycock. In November of 1992, Aycock returned to his parent's home in Monroe to be with his parents because his father underwent heart surgery. After his father passed away on November 30, 1992, Aycock assumed his father's cattle business. At the time of trial, plaintiff was engaged in cattle and hay operations.
*1337 The record reflects that Aycock's educational background is 2 years of college and training in petrochemical design and drafting. Plaintiff contends that he entered the cattle business after he purportedly exhausted all efforts of obtaining employment in the oil and gas industry. His job experience includes mechanical designer, engineering surveyor, drafting, operations manager and sales. At the time of the accident, plaintiff's annual salary was $44,200.00. The record reflects that plaintiff's efforts to seek employment in the oil and gas industry did not include sending out resumes or filling out applications, but merely looking through the newspaper, and calling people.
The first jury was also presented with the testimony of Michelle Leblanc Wall, a vocational rehabilitation consultant, who testified that based upon her review of the testimony of medical experts and the plaintiff, Aycock could return to work in sales or drafting. Ms. Wall testified that plaintiff may need to enroll in a computer assisted drafting course lasting a matter of months and costing approximately $3,000.00 in order to obtain a position as a drafter. Ms. Wall further testified she found positions available in Houston, Lafayette and Monroe in drafting and sales with minimal effort. According to Ms. Wall, salaries for these positions ranged from $30,000 to $86,000 depending upon experience. Ms. Wall also testified that a position in technical sales at an annual salary of $45,000 was available in Monroe.
Interestingly, the trial judge in his reasons for judgment stated after reviewing the evidence presented to the first jury, that at least an inference from the evidence is that plaintiff suffered no loss of future earnings and no loss of earning capacity. The court stated: "It is this Court's assessment that such an inference could indeed be a reasonable inference based on the facts and circumstances of this case, and based on this Court's appreciation of the attitude and demeanor of the jury during the trial." Nevertheless, the trial judge overturned the jury's verdict and awarded $345,566.00 for loss of future earnings and/or loss of earning capacity. The trial court in its judgment on post-trial motions, ordered defendants to declare in the record within 15 days whether it would accept the additur and, if not, the trial court would order a new trial on the sole issue of loss of future earnings and/or loss of earning capacity. Defendants declined the additur and a new trial was held.
La.Code Civ.P. art. 2083B provides:
B. In reviewing a judgment reformed in accordance with a remittitur or additur, the court shall consider the reasonableness of the underlying jury verdict.
The standard to be applied is whether the jury's award constitutes an abuse of discretion, and the trial court abuses its discretion in granting an additur when the jury's award is within its range of discretion. Cormier v. Cliff's Drilling Co., 93-1260 (La.App. 3 Cir. 5/4/94); 640 So.2d 552; Lougon v. Era Aviation, Inc., 609 So.2d 330 (La.App. 3 Cir.1992).
Based upon the evidence presented at trial, this court cannot say that the jury in the first trial abused its discretion in refusing to award an amount for loss of future earnings and/or earning capacity. Thus, the jury verdict that plaintiff did not sustain a loss of future earnings and/or earning capacity is reinstated.
Because of our ruling, plaintiff's and defendant's assignment of error relating to the award of $50,000.00 for loss of future earnings and/or earning capacity by the jury in the second trial is rendered moot.

Past Lost Wages
The jury in the first trial awarded $3,000.00 in past lost wages. The record reflects that plaintiff missed one week of work immediately after the accident and worked on a half-day basis for approximately two weeks. We find that the award of $3,000.00 fairly compensates plaintiff for the amount of work missed. The jury apparently declined to award lost wages after plaintiff terminated his employment after the accident. We find no error in the jury's award and affirm the award of $3,000.00 for lost wages.

*1338 Expert's Fees
Plaintiff contends that the trial judge abused its discretion in fixing the fee of Dr. Randolph Rice, economist, at $500 when Dr. Rice's bill for services was $1,232.50. We find no abuse of discretion in fixing Dr. Rice's fee at $500.00.

Disposition
The jury award in the amount of $170,000 in general damages is affirmed. The jury award for future medical expenses in the amount of $12,000.00 is likewise affirmed. The jury verdict rendered in the first trial that plaintiff did not sustain a loss of future earnings and/or earning capacity is reinstated. The jury award of $3,000.00 for lost wages is affirmed. The trial judge's award of $500.00 for Dr. Rice's expert fees is likewise affirmed.
Costs of appeal are assessed one-half to defendants and one-half to plaintiff.
AFFIRMED IN PART; REVERSED IN PART.
AMY, J., concurs in part and dissents in part, with reasons.
AMY, Judge, concurring in part and dissenting in part.
I concur in the majority's opinion, except as to the affirmation of the award of general damages. In my view, given the record in this case, the amount awarded is excessively high. Therefore, I would lower the general damages award to the highest reasonable amount which the plaintiff's injuries justify. See Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976).