720 So.2d 62 (1998)
Meryl BORRUANO
v.
CITY OF PLAQUEMINE.
No. 97 CA 1926.
Court of Appeal of Louisiana, First Circuit.
September 25, 1998.
*63 Dana K. Larpenteur, Plaquemine, for Plaintiff-Appellee.
Paul Holmes, Baton Rouge, for Defendant-Appellant.
Before FITZSIMMONS and GUIDRY, JJ., and CHIASSON, J. Pro Tem.[1]
FITZSIMMONS, Judge.
Meryl M. Borruano filed a lawsuit against the City of Plaquemine (City). She alleged that she "tripped and fell on a rug near the access doors...." Following a bench trial, the judge ruled in favor of Ms. Borruano. The City appeals that trial court decision, assigning as error the court's determination that Ms. Borruano carried her burden of proof of establishing liability on the part of the City of Plaquemine for the damages sustained as a result of her accident.
The trial court ruled that: A) the rug created an unreasonable risk of harm; B) the rug, its location, and the change in co-efficient of friction created an unreasonable risk of harm and hazardous condition that caused plaintiff to fall; C) the City had actual and constructive notice that similar rugs at similar locations were a tripping hazard; and D) the rug served little or no social utility because the purpose could have been achieved by the outside rugs and the inside rug could have been easily removed. Finding the trial court's judgment to be manifestly erroneous, it is hereby reversed.

FACTS AND TRIAL TESTIMONY
On the day of the incident, Ms. Borruano proceeded through the front entrance doors into the City building with a friend. Upon returning, she followed her companion who had exited out the same doorway that they had previously entered. Ms. Borruano testified that her foot got caught on the inside rug, which "threw [her] out the door." After falling through the door, Ms. Borruano landed below a step located outside the building. She described the mat as being "flat on the floor." Although Mrs. Borruano testified that the edges were not raised up, she indicated that the "stripe" around the rug, which adhered to the floor surface with velcro, "threw" her out.
Jack J. Ramirez, the city business manager of the City of Plaquemine, testified that woven rugs were kept on each side of the entrance doors to the City Hall for safety and cleanliness reasons. In addition to the several rugs placed outside the entrance doors, the City positioned an additional rug *64 inside the building on the floor adjacent to the door. Mr. Ramirez indicated that the outside area adjacent to the entrance door saturates with water in a rain storm. He elaborated that rain can occur without much warning, resulting in inclement conditions in which the outside rugs do not accomplish the drying and cleaning of the public's foot traffic.
Louis H. Faxon, who testified on behalf of the plaintiff, was qualified as an expert in architecture and particularly interpretation of code standards, ordinances and regulations regarding buildings in Louisiana. Mr. Faxon opined that the location of the mat was not reasonably safe due to the difference between the coefficient of friction from the rug and the floor surface. He stated that this circumstance constituted an unreasonable risk of harm. Mr. Faxon's support for his interpretation was based on a provision of the Life Safety Code, which he stated required that exits be continually maintained free of all obstructions or impediments. Although he denied that the Life Safety Code alluded to the existence of a mat as being an obstruction or impediment to entrance-ways or exit-ways, Mr. Faxon did not see the necessity for the existence of an indoor mat because it was a beautiful day when the incident occurred and there existed an overhang at the entranceway.

LAW
The Supreme Court of Louisiana has recently pronounced that the ultimate determination of an unreasonable risk of harm is subject to review on appeal under the manifest error standard. Reed v. Wal-Mart Stores, Inc., 97-1174, pp. 4-5 (La. 3/4/98); 708 So.2d 362, 365. Thus, a reviewing court is directed to disturb the lower court's holding only if the trier of fact was clearly wrong or manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
The dictates of La.R.S. 9:2800 are applicable to an interpretation of the legal responsibility of a public entity. That statute states in pertinent part:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
In an assertion of strict liability, the plaintiff bears a three-tiered burden of proof in order to fall within the ambit of La.C.C. arts. 2317 and 2322. This judicially created test incorporates the following prerequisite determinations: 1) the thing which caused the damage was in the care, custody and control of the defendant; 2) the thing had a vice or defect which created an unreasonable risk of harm; and 3) the injuries were caused by the defect. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1112 (La.1990). Plaintiff's coextensive claim in negligence, under the aegis of La.C.C. art. 2315, assumes the same burden of proof, with the additional element of defendant's scienter, or knowledge, of the defect. Sistler, 558 So.2d at 1112, n. 7.
In the matter sub judice, the trial court found against the City pursuant to subsection B. of La.R.S. 9:2800. There is, however, no evidence that a defective condition existed. In the absence of a defective condition that might produce an unreasonable risk of harm, consideration of the issue of actual or constructive notice is pretermitted.
Ms. Borruano indicated that the rug was flat on the floor, and the edges were not sticking up. The essence of the claim of a defect centers on the change in coefficients of friction between the mat surface and the floor surface. However, Mr. Faxon testified that he did not measure the coefficient of friction of either the floor or the mat surface. Moreover, he failed to support his opinion with any indicia of a standard of measurement *65 for minimally acceptable changes in coefficiency of floor surfaces. His conclusion that the mat produced an unreasonably dangerous condition was premised upon his assessment that the mat was superfluous. Expendability is not the test for the existence of a defect that causes an unreasonably dangerous condition. The determination that the mere existence of a standard floor mat at the entranceway inside the public building constituted an unreasonable risk of harm to this plaintiff defies not only the judicially created legal precepts associated with unreasonable risk of harm, but is inconsistent with the axioms of common sense.
The test to determine whether an owner or custodian has fulfilled the minimum requirements to satisfy its duty, or standard of care, for the safety of persons on its premises, and the attendant legal obligation of not exposing such persons to unreasonable risks of injury or harm, is employed by considering several variables. The court is required to balance the likelihood and magnitude of harm against the utility of the thing, as well as consider a broad range of social, economic and moral factors. These factors include the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct at the time of the accident. Lee v. Magnolia Garden Apartments, 96-1328, p. 17 (La.App. 1st Cir. 5/9/97); 694 So.2d 1142, 1152, writ denied, 97-1544 (La. 9/26/97); 701 So.2d 990.
In the present case, the mat had been placed inside the building as a precautionary measure to protect the public against water dripping from people who entered the facility during a heavy rain or to guard against excess mud falling on the floor upon entry into the building. Although the weather was lovely on the day that Ms. Borruano traversed the floor of City Hall, Mr. Ramirez pointed out that the climate is subject to inclement weather conditions, including rain storms that might arise without significant advance notice. The mere fact that the purpose of the mat was to accommodate those entering the building, rather than those exiting the premises, does not mitigate the utility of the placement of the mats in that location. Moreover, it does not diminish its utility in preventing the type of situation that occurred in Bergeron v. Southeastern Louisiana University, 610 So.2d 986, 988-989 (La. App. 1st Cir.1992). In Bergeron, this court deemed the failure to place mats inside a lobby that became slippery in rain to constitute negligence in not maintaining the entrance of the building in a safe condition.
Mr. Ramirez testified that he had measured the thickness of the rug, which he stated to be one-eighth inch. There was no evidence to support a finding that a oneeighth inch deviation in the height of the surface between a floor mat and the floor surface constituted a defective condition. Mr. Faxon did not ascribe any flaw in the elevation of the mat on the floor. Moreover, one does not expect the surface of a mat to be totally flush with the floor on which it is located.
A review of previous cases involving the existence vel non of mats inside of buildings and the resulting liability of the custodian militates in favor of the precautionary device of placing mats to prevent possible slippery conditions. In Dorthlon v. St. Francis Medical Center, Inc., 28,426 (La.App. 2nd Cir. 6/26/96); 677 So.2d 654, 658, the plaintiff alleged that the indoor mat was defective because it extended beyond the entranceway where it would curl up. The evidence did not substantiate that there was any curling of the edges of the mat; accordingly, no defect was proven. Another case, Doucet v. City of Eunice, 620 So.2d 519 (La.App. 3rd Cir.), writ denied, 626 So.2d 1175 (La.1993), addressed the placement of non-skid mats that lined the floor from each entry door to a corresponding door. The plaintiff entered the foyer wearing house slippers, and crossed off the mat on her way to the left hand lobby door. She slipped and fell when she crossed the area between the lines of mats. The third circuit reversed the trial court finding of fault of the City, attributing full liability to the plaintiff.
Only when the mat itself, or conditions around the mat, have been deemed defective, have the courts found a failure of the duty to take reasonably necessary measures. In Oalmann v. K-Mart Corporation, 630 So.2d 911 (La.App. 4th Cir.1993), writ denied, 94-0244 *66 (La. 3/18/94); 634 So.2d 859, the existence of a puddle of water on the floor inside of K-Mart, not the fact that the store had consecutively placed two mats inside the building, resulted in failure to exercise reasonable care. So too in Barton v. Wal-Mart Stores, Inc., 97-801 (La.App. 3rd Cir. 12/10/97); 704 So.2d 361, the placement of mats in the vestibule and inside the main entrance was not considered a defective condition; but rather, it was the fact that the mats became saturated with water and resulted in slippery conditions that constituted an unreasonable risk of harm to the patrons. In Jones v. Trailor, 93-2144, (La.App. 4th Cir. 4/28/94); 636 So.2d 1112, the mat contained a hole in the area of the mat that formed the normal passageway. Contrarily, and significant to the instant case, if rainy conditions had prevailed, the surface had been slippery or wet, and there had been no mat within the premises on the day that plaintiff visited the building, the City would have been vulnerable to a lawsuit for the failure to provide reasonably safe conditions.
Accordingly, the judgment of the trial court is reversed. The petition filed on behalf of Meryl Borruano is dismissed. All costs associated with this appeal are assessed to Meryl Borruano.
REVERSED AND RENDERED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.