CARAWAY, J.
h While carrying a box and garbage bag full of her son’s clothes, the plaintiff slipped and fell a few steps into the lobby of a dormitory operated by the defendants after having entered and exited the building at least once before while it was raining. Plaintiff suffered injuries to her left leg and knee and subsequently filed a negligence suit for failure to protect from the hazard or warn those entering the building. The defendant’s first motion for summary judgment was denied, but the Louisiana Supreme Court granted the defendant’s writ application and remanded for further consideration in light of Buf-kin v. Felipe’s Louisiana, LLC, 14-0288 (La. 10/15/14), 171 So.3d 851. After reconsideration, the trial court granted the defendant’s motion for summary judgment.

Facts

On August 25, 2012, Rubiela Kadlec (“Kadlec”) and her son, D.J. Morrison (“Morrison”), traveled from Provengal to Louisiana Tech University’s (“Tech”) campus in Ruston, arriving at some time around noon. Upon arriving, the two entered Graham Hall, a dormitory on campus, and met Devin Tant (“Tant”), a student and Hall Director for the dormitory. As a part of his job duties, Tant was tasked with checking in students who would be living in Graham Hall. In addition to checking in Morrison, Tant also informed Morrison of some of the improvements that had been made to the dormitory over the summer because Morrison was going to be working as a Resident Assistant in Graham Hall that year. Those improvements included work on the air conditioning units and ducts, new carpet in certain areas, and the floors being freshly waxed. Tant stated that he informed |2Morrison of the recent waxing because Morrison, as a Resident Assistant, would be required to put up a sign asking people not to drag luggage across the floor for fear of scratching it.
Graham Hall’s entrance consists of a set of glass double doors with a horizontal metal bar about half-way up as a push handle. A check-in desk is located immediately inside the doors on the left hand side, about 3-4 feet from the edge of the door. The doors use magnetic locks and Tech uses a key fob system which allows those residents with the fobs to scan them to unlock the door to enter. In order to avoid having to go around the end of the desk repeatedly to let people in that day, Tant used a wooden ehock to hold the door open. Immediately outside of the doors *994 was a mat, but there was not one inside the building. The door is recessed from the rest of the building and an awning extends beyond the entranceway to provide approximately 5 feet of cover outside of the doorway. Before Kadlec’s accident occurred, the door had been open for at least a couple of hours.
After being checked in, Kadlec and Morrison spent approximately an hour and a half inside Graham Hall, during which time Morrison and Kadlec spoke with other students, parents, and some maintenance people who were friends of Morrison about the upcoming school year. There is a controversy between the plaintiff and defendant as to whether, during this period of time, a campus custodian, Dewanna Russell (“Russell”), spoke with Kadlec after noticing that she was wearing flip-flops and warned her “to be careful while wearing the flip-flops she had on her feet.” Russell has signed an affidavit to this effect; however, Kadlec signed an affidavit stating that such a conversation never occurred.
Is After Morrison finished speaking with the other students, he and Kadlec went out to the car to begin unloading some items he had brought to move in. The first trip was uneventful. On the second trip out to the car, the weather turned and it started to sprinkle according to Kadlec. By the time of the third trip out to the car, it had started to drizzle. Kadlec and her son were not walking together when making trips to the car, rather they were making alternate trips, with one going roughly as the other was coming in. On one of his trips into Graham Hall, Morrison slipped and almost fell while carrying a television, exclaiming that he had scared himself a bit. Kadlec was not present to see the slip.
On her third trip back into Graham Hall and while it was drizzling (or even “poured” according to her deposition), Kadlec carried a box and a garbage bag with some of Morrison’s dress shirts in it. She followed three other people who were ahead of her as she went up the steps to enter the building. Upon entering Graham Hall, Kadlec slipped and fell approximately 4 steps past the outside door mat. She exclaimed that she thought she had broken her leg. Tant, the Hall Director, was at the desk at the time of the fall, but was facing the key closet at the time of the fall and did not see the accident. After hearing Kadlec fall, he came around the desk to find her holding her knee. Another parent who was present and also happened to be a nurse came to assist and after removing Kadlec’s flip-flops and feeling her knee stated that she thought the knee was dislocated. No other action was taken until Louisiana Tech University police and first-responders arrived to take Kadlec to the hospital.
|4In her deposition, Kadlec stated that she did not see any water on the floor when she exited the building to make her third trip to the car. Further, she stated that any water there would have had to have occurred or gathered inside the doorway while she was on her way to or from the car. Tant’s deposition testimony stated that he believed the floor was slippery where Kadlec fell because there may have been some water on the floor and that any such water would have been tracked in from outside.
Much effort from both parties has been placed on the description and details of what exactly Kadlec was wearing when she fell, specifically her footwear. Unfortunately, deposition testimony states that the footwear was lost at some point during Kadlec’s visit to the hospital. It is agreed that she was wearing thong-style flip-flops at the time of her fall. That is to say that the footwear had a rubber sole and had straps that began between her big toe and *995 second toe and then split and extended back to either side of her foot. There is some dispute as to whether the flip-flops had a leather strap that went around the back of Kadlec’s ankle. The flip-flops had a water-resistant texture on the bottom, and Kadlec had had them for about two years.

Procedural History

After the accident, Kadlec filed suit against Louisiana Tech University and the University of Louisiana System Board of Supervisors and Board of Trustees for the damages she incurred as a result of the fall. Following a discovery period, the defendants filed a motion for summary judgment asserting that there was no genuine issue of material fact as to a duty to protect because the hazard, if there was one, was open and obvious to all. The district court denied the motion for summary judgment, finding that | ¿genuine issues of material fact existed regarding the condition and any notice that Tech might have had. The defendants then filed a writ application to the Second Circuit Court of Appeals, which was denied. The defendants subsequently filed for a writ to the Louisiana Supreme Court. The Louisiana Supreme Court granted the writ and remanded the case to the district court for reconsideration “in light of Bufkin ..., which clarified our holding in Broussard v. State, 12-1238 (La. 4/5/13), 113 So.3d 175.”
Upon reconsideration, the trial court granted the defendant’s motion for summary judgment, applying the risk-utility balancing test from Bufkin to conclude that Louisiana Tech was under no duty to protect or warn of the condition. Plaintiff now appeals to this court assigning error in the district court’s finding that there were no genuine issues of material fact and that the condition was open and obvious to all who encountered it.

Summary Judgment

A de novo standard of review is required when an appellate court considers rulings on summary judgment motions, and the appellate court uses the same criteria that governed the district court’s determination of whether summary judgment was appropriate. Bank of New York Mellon v. Smith, 15-0530 (La. 10/14/15), 180 So.3d 1238, 1243. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law, pursuant to La. C.C.P. art. 966. See Catahoula Parish School Board v. Louisiana Machinery Rentals, LLC, 12-2504 (La. 10/15/2013), 124 So.3d 1065, 1071.
| fiThe burden of proof on a summary judgment motion remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment should be granted. See La. C.C.P. art. 966(D)(1); Bufkin, supra.

Discussion

Before we address the case noted by the Supreme Court for this remand, we will review certain settings where rainy day slip and falls have been addressed in our jurisprudence. The temporary presence of the rainwater on the floor does not create a vice or defect inherent in the floor, building or “thing,” implicating Civil Code Articles 2317.1 and 2322. Likewise, in some settings such as the present, the *996 defendant is not a merchant and therefore not under the express duty of La. R.S. 9:2800.6(A) “to keep his aisles, passageways, and floors in a reasonably safe condition” and to make a “reasonable effort” in monitoring the premises. Nevertheless, under our general negligence standard in Civil Code Article 2815, a nonmerchant, business owner owes a duty to visitors to exercise reasonable care to keep the premises in a safe condition commensurate with the particular circumstances involves. Flipping v. JWH Properties, LLC, 50,648 (LaApp. 2d Cir. 6/8/16), 196 So.3d 149, 156. The duty is less than that owed by a merchant, and the trial court'must consider the relationship 17between the risk of a fall and the reasonableness of the measures taken by the defendant to eliminate the risk. Grinnell v. St. Francis Med. Ctr., Inc., 48,249 (La.App. 2d Cir. 8/21/13), 156 So.3d 117, 122.
Under Louisiana law regarding slip and fall eases, merchants carry the highest duty to protect patrons from dangers. La. R.S. 9:2800.6 governs liability in this area, stating that “a merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition,” and this includes a duty to make “a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.” This burden of care is more clearly stated as requiring merchants to “exercise reasonable care to protect those who enter the store, keep the premises safe from unreasonable risk of harm, and warn persons of known dangers.” Ferlicca v. Brookshire Grocery Co., 50,000 (La.App. 2d Cir. 9/4/15), 175 So.3d 469, 472, citing Jones v. Brookshire Grocery Co., 37,117 (La.App. 2d Cir. 5/14/03), 847 So.2d 43; Ward v. ITT Specialty Risk Servs., Inc., 31,990 (La.App. 2d Cir. 6/16/99), 739 So.2d 251, writ denied, 99-2690 (La. 11/24/99), 750 So.2d 987. This is tempered by the admonishment that, although a merchant has such affirmative duties, he is not the insurer of the safety of patrons. See Turner v. Brookshire Grocery Co., 34,562 (La.App. 2d Cir. 4/4/01), 785 So.2d 161.
This court applied this high duty of care to a merchant’s conduct in a rainy day slip and fall case and found that the merchant had shown due care for the maintenance of the store entrance. Ward v. ITT Specialty Risk Seros., supra. In that case, a plaintiff slipped and fell as she reached for a shopping cart when entering a grocery store. It was undisputed that water had dripped [soff the shopping carts and accumulated in the entrance and that the manager of the store had seen the accumulation and called for a mop to clean it up just minutes before the accident. The store manager testified that, in order to protect against the dangers caused by the rain, extra mats were placed in the entrance area, six warning signs were placed around the entry, and periodic inspections of the floor occurred throughout the day, with one just 39 minutes before the accident. Looking to jurisprudence that considered whether a store exercised reasonable care where plaintiffs slipped and fell while entering stores during rainy weather, this Court determined that the factfinder was not clearly wrong in determining that the store exercised reasonable care upon a showing that the store had a procedure in place to deal with extra water resulting from rainy weather and that the procedure was followed. Id.; see also Dawson v. Brookshire Grocery Co., 31,042 (La.App. 2d Cir. 9/23/98), 718 So.2d 623; Tannehill v. Brookshire Grocery Co., 588 So.2d 1282 (La. App. 2d Cir. 1991), writ denied, 692 So.2d 1334 (La. 1992); Hall v. Kroger Co., 499 So.2d 469 (La. App. 2d Cir.1986); Johnson v. Tayco Foods, 475 So.2d 65 (La. App. 2d Cir. 1985), writ denied, 478 So.2d *997 149 (La. 1985); Crandell v. Winn-Dixie Louisiana, Inc., 580 So,2d 967 (La. App. 5th Cir. 1991).
Jurisprudence also demonstrates that when a store has inadequate or nonexistent procedures to deal with rain, it may be found to have failed to exercise reasonable care for the rain-wet floor. For example, in Barton v. Wal-Mart Stores, Inc., 97-801 (La.App. 3d Cir. 12/10/97), 704 So.2d 361, the court determined that a defendant store that did not follow its written rainy day procedure was liable for the damages caused when a plaintiff | flipped and fell upon entering the store on a rainy day. There the plaintiff slipped on accumulated rainwater and dirt that had been tracked into the store after wiping h'is feet on two different sets of maps. Id. at 363.
In Flipping, this court found no manifest error when a bench trial resulted in an assessment of equal fault after a plaintiff slipped and fell upon entering the defendant’s office building on a rainy day. Flipping, supra. The accident occurred immediately as the plaintiff stepped from the wet sidewalk into the building. The mat inside the building was apparently not placed close enough to the door and the slip occurred as plaintiffs foot first stepped on the tile floor. In reviewing the case to determine whether the defendant had a duty to protect against the hazard, the court used a duty-risk analysis to determine if the hazard was open and obvious as alleged by the defendants. The court first stated that the defendant had “a duty to have rainy-day safety measures that were prudent and reasonable at this customer entrance.”. Additionally, “the need for a mat and its reasonableness were conceded by [the defendant’s] having the mat present in the first place. The evidence supported a determination that the mat was not properly placed; therefore “in that overall setting with the customer escaping the rainy conditions outside, the failure of [the defendant] to maintain a mat for the customer stepping up and onto a damp floor amounted to a breach of its duty under these circumstances.” Id.
In King v. Allen Court Apartments II, 15-0858 (La.App. 1st Cir. 12/23/15), 185 So.3d 835, writ denied, 16-0148 (La. 3/14/16), 189 So.3d 1069, the court addressed an appeal from a trial court’s grant of summary judgment against a plaintiff who had sued the owners and insurers of his | inapartment complex after he fell on the wet tile flooring in the entranceway of the complex in which he lived. The facts of the case indicate that on a stormy night the plaintiff left his apartment to get food and returned approximately a half hour later. Upon returning, and while it was still windy and raining, he re-entered his apartment building through the same doorway he left and slipped and fell- on the tile floor, breaking his leg. After the plaintiff filed suit, the defendants filed a motion for summary judgment asserting no defect existed on the premises, or alternatively that the plaintiff could not establish that any defect caused the accident. According to the court of appeal, the evidence presented fell short of being able to prove a defect, and that the plaintiff “had to show more than a mere hazard was presented by the wet floor, but that the wet floor or rug could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances or that the wet floor and/or rug were unreasonably dangerous.” Id. at 841. Summary judgment in favor of the lessor was affirmed.
In Bergeron v. Southeastern Louisiana Univ., 610 So.2d 986 (La. App. 1st Cir. 1992), the First Circuit affirmed a trial court’s finding of negligence where a student slipped and fell when entering a dor *998 mitory lobby on a rainy day and while wearing flip-flops. Testimony at trial established that the university had a monitor stationed in the lobby to protect against dangerous conditions such as water on the floor and that there was a procedure involving mats and mopping ordinarily employed by the university that was not followed. Based on those circumstances, the court found the trial court was correct in finding that the plaintiff had successfully |nmade a showing of negligence under La. C.C. art. 2315. Because of the monitor, the university either knew or should have known of the condition. Although a percentage of fault was assigned to the plaintiff for his footwear, the First Circuit upheld the finding of negligence.
In three of these cases, Ward, Barton, and Flipping, rainwater on the floor was found to present a risk of harm that was within the defendant’s duty of care to keep the premises safe for patrons’ entries into the building. In contrast, King found that the wet floor was not evidence of a “defect” but simply a “mere hazard” that could not reasonably be expected to cause injury to a person using ordinary care. Last, Bergeron found a breach of duty by a university for rainwater on a dormitory floor.
The differences in the analysis of all of these cases may stem from differences in the relationships between the parties, from the merchant/customer setting, to the non-merchant/customer setting, to the lessor/lessee setting. When it comes to the unavoidable risk of rainwater tracked into the premises, Ward, Flipping, and Berger-on charged the defendant to take some protective measures regarding the expected wet floors. By contrast, in King, the routine entrance of tenants from the rain outside into the common passageway did not require the wet floor risk to be periodically monitored during the rainstorm. The two rulings of the First Circuit Court of Appeal, King and Bergeron, appear to conflict.
In Barton, Bergeron, and Flipping, the owners of the buildings with a rain-wet floor were held liable to patrons injured upon entering the business premises. This is because a wet floor was held to present an unreasonable risk of harm or unreasonably dangerous condition for which the owner owed | iaa duty to patrons to correct or warn. Nevertheless, on a rainy day, a person entering the building may also be expected to recognize that water tracked into the building by herself and others will be present on the floor. This raises the question of the open and obvious nature of the rainwater hazard which persons coming out of the rain must guard against.
In the Louisiana Supreme Court’s remand of this case to the trial court, it directed reconsideration in light of Bufkin, supra. Bufkin involved a construction dumpster placed by the defendant contractor on a street in the French Quarter of New Orleans while restoration work was occurring to a building. The pedestrian claimed that the dumpster blocked his vision in crossing the street, causing the accident and injury. The court granted summary judgment in favor of the defendant upon the following conclusions:
The evidence presented on motion for summary judgment established that any vision obstruction, caused by the dumpster, to a pedestrian crossing Conti Street at that mid-block location was obvious and apparent, and reasonably safe for persons exercising ordinary care and prudence. Moreover, because-the size of the dumpster was comparable to a pick-up truck, this particular situation was of the type any pedestrian might encounter on a regular basis. Thus, we conclude that Shamrock had no duty to warn of the obstruction presented to *999 pedestrians by its pick-up-truck-sized dumpster, a large inanimate object visible to all.
Id., 171 So.3d at 858.
Bufkin’s holding that the dumpster was an open and obvious hazard raises the question of the open and obvious nature of rainwater at the entrance of a building. While clear water may not be actually seen, the person knows upon entering the building that she has water upon her shoes and that others may have also brought some water into the entryway. Nevertheless, such rainwater hazard as seen from the jurisprudence has [ 18never been held to be completely outside the duty of all building owners to keep their properties in a reasonable safe condition cn‘ to warn of a rain wet floor.
This is not a merchant/customer setting and is basically a lease arrangement for dormitory living. The duty of the owner of the dormitory is to keep the common entryway area of the building in a reasonably safe condition. Tech maintained a mat under the large awning area before the entry into the building. Yet, how dry that mat remained on this occasion, because of the lengthy period of rain, is unclear. Tech did not offer evidence that it routinely took steps on a rainy day to monitor the floor condition or to warn the residents by the use of cones. The residents of the dormitory continuously come and go through the common entryway, and the cost of preventing the harm of routine rainwater, a risk that is apparent to all on rainy days, weighs in Tech’s favor. The cost would be substantial, adding to the overall cost of dormitory housing.
Nevertheless, under the particular facts of this case, Tech did have a person at the scene of the accident and the accident occurred during the high traffic time for the moving day involving new students and their family members and friends. The evidence suggests that the rain had not just started prior to the accident. The amount of water on the floor at the time of the accident is not clearly shown and remains in dispute. Whether Tech should have been alerted to a hazard on this rainy day under all of these circumstances is not free from doubt, leaving material issues of fact in this summary judgment setting.
[ uiConclusion
Accordingly, we reverse the trial court’s judgment and remand the matter for trial. Costs of this proceeding are assessed to the defendant in the amount of $324.50, in accordance with La. R.S. 13:5112.
REVERSED AND REMANDED.
APPLICATION FOR REHEARING
Before WILLIAMS, CARAWAY, DREW, LOLLEY and STONE, JJ.
Rehearing denied.
DREW, J., would grant .rehearing.