704 So.2d 361 (1997)
Edwin L. BARTON, Sr., et ux., Plaintiffs-Appellees,
v.
WAL-MART STORES, INC., Defendant-Appellant.
No. 97-801.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1997.
*362 Philip Gardiner Hunter, Alexandria, for Edwin L. Barton Sr., et ux.
James Dey Kirk, Alexandria, for Wal-Mart Stores, Inc.
Before THIBODEAUX, AMY and SULLIVAN, JJ.
AMY, Judge.
Plaintiffs, Edwin and Alice Barton, filed suit against the defendant alleging that Edwin was injured after a near fall caused by an allegedly hazardous condition inside a Wal-Mart store. The trial court found in favor of the plaintiffs. The defendant, Wal-Mart, now appeals. For the following reasons, we affirm.

DISCUSSION OF THE RECORD
This case arises from an accident which occurred on November 15, 1993, at approximately 11:30 a.m., inside a Wal-Mart store located in Alexandria, Louisiana. The undisputed testimony in the record reveals that, on the morning in question, there was inclement weather in the area, ranging from moderate to light rain. Mr. Barton testified that, on the drive to Wal-Mart from his residence in Forest Hill, Louisiana, he experienced moderate rain which tapered off to "just a mist, what's called a sprinkle." Mr. Barton further testified that he noted the existence of puddles in Wal-Mart's parking *363 lot. Then, upon entering the store and wiping his feet on two different sets of mats, Mr. Barton slipped and nearly fell injuring his left knee and ankle.
Mr. Barton filed suit against Wal-Mart for the injuries he allegedly sustained as a result of the near fall. Mr. Barton alleged that the condition of the floor inside the store presented an unreasonable risk of harm to him and other patrons, Wal-Mart knew or should have known that the condition could cause injuries like those suffered by him, and Wal-Mart failed to exercise reasonable care to prevent the accident. Along with the damages sought by the plaintiff, his wife, Mrs. Barton, sought damages for loss of companionship, security, love and affection, which resulted from her husband's injuries.
On January 23, 1997, before hearing evidence, the trial judge considered the defendant's motion in limine to exclude the testimony of Joel McMickens, a mail carrier and a pastor. The trial judge denied Wal-Mart's motion. Following the trial on the merits, the trial judge found in favor of the Bartons. In the reasons for ruling, the trial judge found that, on the rainy day in question, Mr. Barton was injured when he slipped and nearly fell on a mixture of water and a foreign substance inside the defendant's store, a condition which presented a foreseeable, unreasonable risk of harm. The trial judge noted that Wal-Mart had actual notice that more customers used the main entrance to the store, and, therefore, on rainy days, "more water would accumulate in the vestibule than in the other entrances because the majority of the customers used that entrance." Additionally, the trial judge noted that although the defendant presented testimony concerning its "`written rainy day procedure', [the procedure] was not properly implemented." Accordingly, the trial judge awarded Mr. Barton $36,405.50 for his damages. The trial court also awarded $1,000.00 to Mrs. Barton on her loss of consortium claim.
Wal-Mart filed this appeal and asserts the following as error: (1) the trial court erred in finding that the condition of the floor or the level of monitoring of the condition of the entrance floor presented an unreasonable risk of harm to Mr. Barton; and (2) the trial court erred in allowing into evidence the testimony of Joel McMickens, testimony which was inconsistent with prior rulings and unfairly prejudicial to the defense.

LAW

Liability
Wal-Mart first contends that, assuming the factual findings of the trial court are correct, the trial court erred in concluding those factual findings were sufficient to support the finding that Mr. Barton's injuries were caused by an unreasonably dangerous condition in the store. Wal-Mart further contends that the trial court, effectively imposing on it a higher standard of care, "held [it], not to a standard of reasonableness, but strictly liable based only on finding causation and damages."
In order for a merchant to be liable to a patron under a theory of negligence in a slip and fall case, the plaintiff must satisfy the burden of proof set forth in La.R.S. 9:2800.6[1]. At the time of the plaintiff's accident, La. R.S. 9:2800.6 provided in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on the merchant's premises, the claimant shall have the burden of proving, *364 in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the condition existed for such a period of time that it would have been discovered if the merchant failed to exercise reasonable care.
In evaluating the reasonableness of the protective measures employed by a merchant, this court has considered the following factors to be viewed in light of the circumstances present in each case: "the risk involved, the merchant's type and volume of merchandise, the type of display, the floor space used for customer service, the volume of business, the time of day, [and] the section of the premises[.]" Thompson v. Stalnaker's Restaurant, 93-1447, pp. 4-5 (La.App. 3 Cir. 6/1/94), 640 So.2d 733, 736, writ denied, 94-1799 (La.10/14/94), 643 So.2d 165. A trial court's finding of liability for damages caused by a slip and fall accident at the defendant's place of business, as well as the presence of comparative fault, are factual determinations that will not be disturbed absent manifest error or unless clearly wrong. Myles v. Brookshires Grocery Co., 29,100 (La.App. 2 Cir. 1/22/97), 687 So.2d 668.
In its recent decision of White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081, the Louisiana Supreme Court, finding that La.R.S. 9:2800.6 was clear and unambiguous, overruled Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (La.5/22/95), 655 So.2d 309. In doing so, the court held that "[t]he statute does not allow for the inference of constructive notice absent some showing of the temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall." White, 97-393, p. 3, 699 So.2d at 1084. Whether this period of time is sufficient to result in a finding that the merchant had constructive notice of the hazardous condition is a question of fact. Id.
In White, Justice Traylor, writing for the majority, noted several cases where the plaintiff carried his burden of showing actual or constructive notice, including Oalmann v. K-Mart Corp., 630 So.2d 911 (La.App. 4 Cir.1993), writ denied, 94-0244 (La.3/18/94), 634 So.2d 859. See id. at 5, n. 4, 699 So.2d at 1084 n. 4. In Oalmann, the fourth circuit affirmed the trial judge's finding that K-Mart, the defendant in that case, was liable pursuant to La.R.S. 9:2800.6. Similar to the case sub judice, the plaintiff in that case, Ms. Oalmann, slipped and injured herself upon entering K-Mart on a rainy day. The protective measures employed by K-Mart included two sets of mats at the entrance. However, no warning cones were visible to alert customers of the wet conditions. Ms. Oalmann testified that, once she fell, her hand landed in a puddle of water on the floor. The fourth circuit determined that the puddle Ms. Oalmann slipped on created an unreasonable risk of harm, which K-Mart could reasonably foresee that a customer could slip on. Next the fourth circuit, addressing whether the "merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence[,]" wrote:
Ms. Oalmann testified that it had been raining on the day of her fall. K-Mart does not controvert this fact.... Thus, K-Mart did have knowledge of the weather conditions on the day of the accident. Consequently, K-Mart should have known that the rain would cause the floor where the accident occurred to become wet and slippery. The evidence does not clearly establish precisely how long the floor was wet prior to Mrs. Oalmann's fall. Considering the volume of business conducted at a large retail store such as the K-Mart in Meraux and the constant influx of customers, it is foreseeable that the floor near an entrance would become wet, and thus slippery, in a relatively short period of time. It is the opinion of the Court that the accumulation of water at the entrance existed *365 for such a time that K-Mart should have discovered the danger. Given the totality of the circumstances, the Court finds that K-Mart had the requisite constructive notice of the wet floor which caused the fall.
Oalmann, 630 So.2d at 913.
The trial judge, in the case sub judice, in his written reasons for judgment, made the following factual findings:
On November 15, 1993, Edwin Barton (hereinafter "Plaintiff") and his wife went shopping at the Wal-Mart Store (hereinafter "Defendant") located on MacArthur Drive in Alexandria. It rained that day. Therefore, plaintiff walked into the entrance of the store and wiped his boots on a rug. Past the vestibule, and inside the store, he wiped his feet again on another rug. However, after walking a few more steps inside the store, he slipped and almost fell due to a mixture of water and a foreign substance on the floor.
After the incident, plaintiff made his way to a bench near the entrance and removed his boots. He noticed that his ankle had begun to swell. Consequently, he also saw and felt a foreign substance on his neoprene sole cowboy boots and described it as being sticky like liquid detergent or Karo syrup. At that time, a store employee appeared with a mop to clean the area where plaintiff slipped.
Also, as found in the "Law and Argument" section of his reasons, the trial judge made these additional findings:
Although mats were placed in the entrance of Wal-Mart, they only absorbed some of the water in the vestibule. Apparently it was not enough to prevent plaintiff's accident. Furthermore, Wal-[M]art has high volume traffic even on rainy days.
* * * * * *
Wal-[M]art has three (3) entrances: the garden section; automotive; and the front door. However, it is an undisputed fact that most customers enter through the front door. Rainy days are no exceptions. On the day of plaintiff's accident it rained. Therefore, defendant had actual notice that more water would accumulate in the vestibule than in the other entrances because the majority of the customers used that entrance.
Although testimony deduced that defendant had a "written rainy day procedure", it was not properly implemented. Since most customers use the front entrance, defendant could have simply placed more mats in that area. Hence, defendant's failure to adequately respond to an unsafe condition infers a failure to exercise reasonable care.
Mr. Barton testified that, after opening the outside door for his wife, he wiped his cowboy boots on the mats located in the vestibule. Mr. Barton further testified that they continued through the second set of double doors where a second set of mats was located. With regard to the accident that followed, Mr. Barton testified:
We wiped our feet again on that little rug that was on the inside of it and then walked on past, and I spoke to the greeter lady. And probably three or four steps past her, I slipped and injured my left knee and ankle.
* * * * * *
... [W]e were walking in and I made a step. And as my left footwhen I touched the floor with my left foot, well, itslipped forward andand it rolled my ankle over and then threw all the weight onto my knee.
Mr. Barton's account of his accident mirrored the testimony of his wife, Alice Barton, and Wilma Davis, another patron of Wal-Mart who witnessed the accident on the morning of November 15, 1993.
The conflicting testimony concerns the condition of the entranceway on this particular morning. The Bartons both testified that the floor was visibly wet, whereas, Wal-Mart personnel maintained that the floor was dry. Mr. Barton testified that the wetness, a mixture of rain and debris tracked in from outside, extended past the people greeter. Mrs. Barton made a similar observation. Mr. Barton further testified that, after regaining his balance, he noted:
[The spot he slid on] was approximately eight inches wide and probably a foot long. *366 And ... the floor was ... dirty. It wasn't mud, but it was dirt from people tracking in. And ... it extended on probably almost to the little Wal-Mart greeting face that's usually on the floor there.... [T]he dirt and wetness tapered out further in the store you get.... And it looked like something had been spilled and incorporated into the water into the trash[.]
Mr. Barton further testified that it appeared that other people had also stepped on the spot that he did because "you could see the sliding marks where shoe soles had slid on... this stuff." Additionally, Mr. Barton testified that the mats located in the vestibule and inside the main entrance were saturated and he did not notice any warning cones to alert the patrons of the slippery conditions. Both Mr. and Mrs. Barton testified that, while waiting for the co-manager to come up front after the accident, a Wal-Mart employee appeared with a dry mop and mopped the area where Mr. Barton slipped. The Bartons testified that someone from the customer service counter remarked to the unknown maintenance worker, "Don'tyou shouldn't be mopping that up?"
Rita Epps, a longtime employee of Wal-Mart, testified as to the size of the store, type of business, and general working procedures of Wal-Mart. According to Ms. Epps, the Wal-Mart store where Mr. Barton allegedly was injured is 122,000 square feet. Additionally, Ms. Epps testified that a majority of the customer traffic comes through the main entrance. Ms. Epps, discussing Wal-Mart's rainy day procedure, testified that the purpose of the mats at the doors on rainy days was "to catch the rain from people coming into the store." Also, there was no regular interval for management personnel to make inspections of the front area to insure that, on rainy days, this high traffic area was maintained properly. Ms. Epps further confirmed that on previous rainy days she witnessed rain water extending beyond the floor mats which created a hazardous condition. Ms. Epps also stated that, if the mats were saturated, the mats should be replaced. However, in her fourteen years of employment with Wal-Mart, she had no personal knowledge of a mat being replaced during working hours. Instead, mats were commonly replaced at night, when necessary, because the task required that the doors be blocked off. Lastly, Ms. Epps admitted that, if water was extending past the mats, it would be no problem to add additional dry mats, which were available, on the floor of the entranceway. The decision of how many mats and in what configuration the mats would be placed was made by the maintenance worker on duty. There was no set procedure.
Keith Blanchard, who was co-manager of the MacArthur Drive Wal-Mart at the time of Mr. Barton's accident, also testified. Mr. Blanchard testified that, after being informed of Mr. Barton's accident, he went to the front of the store and inspected the floor for debris or wetness. Mr. Blanchard testified that he ran his hand across the floor and found it to be dry. However, Mr. Blanchard testified that he had no knowledge of any employee dry mopping the area between the time of the accident and his arrival to the front of the store. Mr. Blanchard, when questioned as to the average shopping volume at Wal-Mart, a mass merchandiser, testified, as follows:
A In that store, probably between, and this is three yearstwoyears later, between five and eight thousand a day.
Q Do you know what the average dollar volume of sales is daily?
A I don't know the average.
Q Just a ballpark.
A Anywhere from fifty to over a hundred thousand a day on abusy day.
Like Ms. Epps, Mr. Blanchard testified that it would be ordinary safety to add additional mats if water was being tracked past the existing mats. Mr. Blanchard does not recall noticing any warning cones placed in the area.
Velma Page was the People Greeter on duty at the time of Mr. Barton's accident. Ms. Page confirmed the specific duties of the People Greeter on rainy days. Ms. Page testified that the People Greeter was supposed to greet patrons, as on ordinary days, but, additionally, she was to put umbrellas in bags, make sure the mats and warning cones were in place at the entrance, and that the *367 floor was dry. To aid her in her task of keeping the floor dry, Ms. Page testified that she maintained a dry mop to pass across the floor, as needed. Ms. Page testified that, on the morning of the accident, five mats and warning cones were in place. Although, Ms. Page did not see the actual accident, she testified that she did see a heel mark approximately six inches long at the point where Mr. Barton says he slipped. Ms. Page further testified that she did not see anyone dry mop the area between the time of Mr. Barton's accident and Mr. Blanchard's inspection of the area. Additionally, Ms. Page testified that she had no doubt in her mind that the floor was dry at the time Mr. Barton allegedly slipped and almost fell.
We agree with the defendant that La.R.S. 9:2800.6 does not require a merchant to guarantee a totally dry surface. And, while we recognize that the lack of organized protective measures will not necessarily render a merchant liable, we also recognize that the existence of preventive measures alone will not eliminate liability. Protective measures established by a merchant, even if, in theory, reasonable to combat a possible hazard inside the merchant's place of business, are of no effect if not properly implemented. The trial court found that Wal-Mart, in neglecting to follow its own "written rainy day procedure[,]" failed to exercise reasonable care and, therefore, was liable for the damages caused by the unreasonably dangerous condition in the store. Additionally, the trial court credited the testimony of the Bartons when he found that the area had been dry mopped between the time of the accident and the inspection by Mr. Blanchard.
As previously discussed, the findings of a trier of fact are reviewed using the manifest error/clearly wrong standard, and such findings based on the credibility of witnesses are to be accorded great weight. Rosell v. ESCO, 549 So.2d 840 (La.1989). Our review of the record does not indicate that the trial court was clearly wrong in its findings. Wal-Mart is a high volume business. Furthermore, the area where the accident occurred is a high traffic area where large numbers of patrons enter the store. The risk that water will accumulate in this area on rainy days is great. In fact, Ms. Epps, a Wal-Mart representative, testified that such a situation was an unreasonable risk of harm and had been known to happen on rainy days in the area where Mr. Barton slipped and almost fell. When patrons are made to walk through a known high traffic area, across mats that are saturated with rain, a reasonable trier of fact could conclude that this creates an unreasonable risk of harm where it is foreseeable that a slip and fall accident is likely to occur. And, Wal-Mart's "written rainy day procedure" "cannot be effective, or reasonable if not followed." Thompson, 93-1447, p. 6, 640 So.2d at 737.
Accordingly, this assignment lacks merit.

Testimony of Joel McMickens
Wal-Mart next contends that the trial court erred in allowing into evidence the testimony of Joel McMickens, the mail carrier who delivered mail to Wal-Mart on the morning of the accident, arguing that the evidence was unfairly prejudicial to the defense. In support of this contention, Wal-Mart argued that the testimony of Mr. McMickens was neither relevant nor admissible pursuant to La.Code Evid. art. 401.
The trial judge denied Wal-Mart's motion in limine. In so ruling, the trial judge, noting that it was a bench trial, found the defendant's arguments applicable to the weight of Mr. McMickens testimony rather than the relevance. As such, the trial judge ruled, as follows:
The Court, since this is a judge trial, will make a determination as to credibility or the accuracy of his testimony, whether the testimony is derived from his own personal knowledge or whether came about as a result of reflected conversation with the plaintiff in this case. Since this is a bench trial, the Court will allow that to take place and will give it its proper weight, if any, at the time that it is deduced at trial. And, for that reason, your motion is denied. I will allow that person to testify.
The following testimony was presented at trial. Mr. McMickens testified that, at church services held on the Wednesday following the accident, he noticed Mr. *368 Barton was using crutches. Mr. McMickens, explained further:
Well, I had seen him on Sunday, and he was feeling fine. No crutches or anything. And then on Wednesday night when we got to church, all of a sudden, here he is on crutches. So I inquired as to what's happened, you know. And he shared with me the incident at Wal-Mart.
Mr. McMickens further explained that "as [Mr. Barton] told me [about the accident], I was thinking to myself, this isthis is really a big coincidence because I almost fell myself that day. It was raining." Mr. McMickens recalled having a similar experience on the same day as the accident, when he was inside the store delivering the mail. Mr. McMickens testified that he generally delivers the mail to Wal-Mart between 10:00 and 11:30 a.m. On the day of the accident, Mr. McMickens testified that, to the best of his recollection, he delivered the mail between 10:30 and 11:30 a.m. Recalling that occasion, Mr. McMickens testified:
Well, as I went through, I got through the exterior door and went through the what I call foyer and then on into the inner part of the store there. And after around a few steps, I would say approximately six to eight feet, all of a sudden both feet went forward like Iscooted approximately about a foot or a foot and a half. Enough that I almost lost my footing, but yet I maintained it. And I looked back out of curiosity to see how far I'd scooted....
Q Was that six or eight feet pass [sic] thespot where the mats were?
A Well, at the time, the mats were just in thebetween those two doors ...
* * * * * *
Q And what was the condition of the floor that you were walking on when you slipped?
A It was pretty wet.
Q And could you see footprints on it?
A Well, I see where I skidded.
Q All right. Was itdid it appear to be water?
A It appeared to be aan accumulation of water due to the rain that had been coming down.
Q And this was water that would have been getting past the mats?
A Right. Apparently so.
From the trial judge's written reasons, it is impossible to ascertain what weight, if any, was given to Mr. McMickens' testimony. Evidence and testimony can be excluded if its probative value is outweighed by the danger of unfair prejudice, despite the fact that it is relevant. La.Code Evid. art. 403. A trial judge is vested with great discretion in weighing the probative value of evidence with its potential prejudice. Hebert v. Angelle, 600 So.2d 832 (La.App. 3 Cir.), writ denied, 604 So.2d 997 (La.1992). It is clear that the trial court was well within its discretion to allow the testimony into evidence. Accordingly, this assignment also lacks merit.

DECREE
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the defendant/appellant, Wal-Mart Stores, Inc.
AFFIRMED.
NOTES
[1] This statute was substantively amended by Act No. 8 of the First Extraordinary Legislative Session of 1996, effective May 1, 1996. Section 2 of that Act declares that "the provisions of the Act shall apply only to those causes of action arising on or after the effective date of this Act." We note that the trial court cited to the revised version of La.R.S. 9:2800.6. However, we find this error harmless.