IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-31309

Summary Calendar
_____


EMILY POLLET

                                        Plaintiff - Appellant

        v.

SEARS ROEBUCK AND COMPANY

                                        Defendant - Appellee


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
No. OO-CV-3654-T
_____
July 18, 2002

Before KING, Chief Judge, and DAVIS and EMILIO M. GARZA, Circuit
Judges.

PER CURIAM:[*]

     Plaintiff-Appellant Emily Pollet appeals the district

court's summary judgment in favor of Defendant-Appellee Sears

Roebuck and Company on Pollet's state law negligence claim

arising from her slip and fall while entering a Sears-owned

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

department store on a rainy day.  For the following reasons, we AFFIRM.

## I.  FACTUAL AND PROCEDURAL HISTORY

On November 20, 1999, Plaintiff-Appellant Emily Pollet slipped and fell as she was entering a Sears Department Store owned by Defendant-Appellee Sears Roebuck and Company ("Sears").  It was raining that day.  On November 20, 2000, Pollet filed suit against Sears in Louisiana state court.  Pollet alleged that Sears's negligence caused her injury because the defendant's store had knowledge of, and failed to correct, a hazardous condition that caused Pollet's fall.  Pollet alleged that the hazard was created by a puddle of rainwater on the entrance floor of the store combined with a floor mat caught under one of the doors.

On December 8, 2000, Sears removed the action to federal district court, pursuant to 28 U.S.C. §§ 1332, 1441(a) (1994),[2]

---

[2]  Section 1441(a) authorizes removal, providing in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court ...."  28 U.S.C. § 1441(a).
Section 1332 delineates the amount in controversy requirement, providing in relevant part that the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of [$75,000], exclusive of interest and costs, and is between– (1) citizens of different States ...."  See 28 U.S.C.A. § 1332 (West 1993 & Supp. 2001).

2

on the ground of diversity of citizenship.[3]  The petition for removal included Sears's assertion, in accordance with § 1332, that, based on Pollet's claimed injuries and damages, the amount in controversy exceeds $75,000.  On June 5, 2001, Sears filed a motion for summary judgment, arguing that Sears had no knowledge of any hazardous condition causing Pollet's fall.  Plaintiff Pollet made no challenge to the district court's jurisdiction to decide the case at this time, or any time prior to appeal to this court.  On October 1, 2001, the district court granted summary judgment in favor of Sears, dismissing Pollet's claims with prejudice.[4]  Pollet timely appeals that summary judgment.

## II.  DISCUSSION

### A.  The Amount in Controversy Exceeds $75,000

For the first time on appeal, Pollet asserts that the district court lacked jurisdiction to grant summary judgment because the amount put in controversy by her suit fails to exceed $75,000.  Pollet is correct that she may properly challenge federal court jurisdiction at any time and that such right is not

---

[3]  Pollet is a citizen of Louisiana, and Sears is a citizen of New York.

[4]  Pollet also originally named Sears's insurer, Liberty Mutual Insurance Company ("Liberty"), as a defendant to this action.  The district court noted in its October 1, 2001 order granting summary judgment, however, that Pollet had not served Liberty and that Liberty did not join Sears's motion for summary judgment.  On October 4, 2001, when the district court entered final judgment in favor of Sears, the court also dismissed Pollet's claims against Liberty, without prejudice.

3

waived on appeal by the failure of a party to raise the issue before a trial court.  See Simon v. Wal-Mart Stores, Inc., 193 F.3d 848, 850 (5th cir. 1999) ("[A] party may neither consent to nor waive federal subject matter jurisdiction.").  Thus, "[f]ederal courts may examine the basis of jurisdiction sua sponte even on appeal."  Id.  She is also correct that for a federal court to have removal jurisdiction, the amount in controversy must exceed $75,000 pursuant to 28 U.S.C. § 1332.

Pollet claims that a settlement demand made by her on March 15, 2001, including $2,301.78 in medical bills and $40,000 in general damages, totaling $42,301.78, in addition to a settlement demand for $49,801.78 submitted to the court on September 26, 2001, show that the amount in controversy does not exceed $75,000.  Both of those demands were made on December 8, 2000, and thus post-removal.  Sears is correct that in making our determination as to the amount in controversy pursuant to § 1332, the damages that we may consider include only those damages claimed at the time of removal.  Id. at 850 & n.10 (citing Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995)).  Thus, we find that any post-removal action taken by Pollet, including either of her post-removal settlement demands, is immaterial to our determination whether her claims exceed $75,000 for the purpose of establishing federal diversity jurisdiction.

4

See Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000).[5]

Louisiana law prohibits a plaintiff such as Pollet from specifying damages in any numerical dollar amount in her

_____

[5] Several of our sister circuits have considered settlement offers or demands relevant to the jurisdictional determination of the amount in controversy. See Cohn, D.V.M. v. Petsmart, Inc., 281 F.3d 837, 840 & n.3 (9th Cir. 2002) (internal quotation and citations omitted) (finding that while a settlement offer itself "may not be determinative" it may "count[] for something" and may be considered relevant if it appears "to reflect a reasonable estimate of the plaintiff's claim."). The Eleventh Circuit, in Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir. 1994), for example, confronted a settlement offer made after removal but that offer merely corroborated an exact dollar amount specified in the complaint that was less than the federal jurisdictional minimum. The Eleventh Circuit found the damages specification in the complaint controlling. See id. We find the reasoning of those courts of appeals in favor of consideration of settlement offers or demands in a determination as to the jurisdictional amount in controversy unpersuasive in the instant, distinguishable circumstance.
Moreover, as we have noted, a "plaintiff's settlement offer is ordinarily less than the damages the plaintiff expects to receive if victorious at trial, because the offer is obviously discounted by the risk of an outright loss at trial." Kliebert v. The Upjohn Co., 915 F.2d 142, 145 (5th Cir. 1990), vacated for reh'g en banc, 923 F.2d 47 (5th Cir. 1991), appeal dism'd per stipulation of settlement, 947 F.2d 736 (5th Cir. 1991) (because the decision was vacated, it is no longer binding precedent but nevertheless instructive on this point). Consequently, Pollet's settlement offers for approximately $42,000 and $50,000 do not necessarily or even persuasively suggest that Pollet's claims amount to no more than $75,000 in controversy. We further note that Pollet was free, but failed, to file a binding stipulation to the court prior to removal indicating that she would seek no more than $75,000 in damages. Such a stipulation timely filed could have prevented removal. See, e.g., Chase v. Shop 'N Save Warehouse Foods, Inc., 110 F.3d 424, 430 (7th Cir. 1997) (admonishing plaintiffs that want to prevent removal to file such a binding stipulation with the court with their complaint because "once a defendant has removed the case ... later filings [are] irrelevant") (internal quotations and citations omitted).

complaint. See La. Code Civ. Proc. Ann. art. 893(A) (West Supp. 2000). This court has established a procedure by which we evaluate the jurisdictional amount in controversy based on a complaint like Pollet's that does not specify damages in dollars. See, e.g., Luckett v. Delta Airlines, Inc., 171 F.3d 295, 298 (5th Cir. 1999). "The defendant may make [its] showing in either of two ways: (1) by demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) by setting forth the facts in controversy ... that support a finding of the requisite amount." Id. (internal quotation and citation omitted) (emphasis in original). The two tests are applied in order, and only if the "facially apparent" test is not met, do we then require "summary-judgment-type" evidence of the amount in controversy. Allen, 63 F.3d at 1336 & n.16.

In cases such as this that are filed without specified dollar damages, the defendant bears the burden of showing by a preponderance of the evidence -- i.e., that it is more likely than not -- that the amount in controversy exceeds $75,000. Id. at 1135. We noted in De Aquilar v. Boeing Co., that a plaintiff remains "master of [her] own claim" and thus that the defendant must show that it is more than merely possible that a plaintiff will recover in excess of the jurisdictional amount. 47 F.3d 1404, 1411-12 (5th Cir. 1995) (citations omitted). However, we also noted in De Aquilar that defendants must be protected from

6

"plaintiffs who seek to manipulate their state pleadings to avoid federal court while retaining the possibility of recovering greater damages in state court following remand" and that this court "'adamantly'" seeks to prevent plaintiffs who manipulate pleadings in such fashion "'from being able to destroy the jurisdictional choice that Congress intended to afford a defendant in the removal statute.'" Id. at 1411 (quoting Boelens v. Redman Homes, Inc., 759 F.2d 504, 507 (5th Cir. 1985)). We thus cautioned against placing too onerous a burden on the defendant when applying the preponderance of the evidence standard to determine whether it is facially apparent from a complaint that claimed damages exceed the federal jurisdictional minimum for removal purposes. See id. at 1411-12. Pollet asserts that Sears fails to satisfy its burden to produce sufficient "summary-judgment-type evidence" to establish an amount in controversy that exceeds the jurisdictional minimum. However, because we find based on Pollet's complaint that it is facially apparent that the amount in controversy more likely than not exceeded $75,000 at the time of removal, we need not inquire into the sufficiency of any other summary-judgment-type evidence brought forth by Sears.

Pollet's claims at the time of removal indicate an amount in controversy that exceeds $75,000. In her complaint originally filed in Louisiana state court, Pollet claimed the following injuries: "serious and painful injuries, including but not

7

limited to severe injuries to her face, left elbow, left hand, and tail bone."  Pollet further claimed that she

> suffered severe physical pain and keen mental anguish, humiliation and embarrassment; and has required medical care for her injuries and serious residuals thereof, she has been disabled in her daily activities and has been handicapped in other activities; she has incurred medical expenses and loss [sic] sums of moneys that otherwise she would have earned, and she continues to have a diminished earnings capacity; she has sustained residual and permanent disabilities and impairments; she may require hospitalization and she will require medical care in the future; these conditions may continue, worsen, or become permanent.

Pollet's complaint also prays for the following damages:  "all such damages which are reasonable ..., including damages for past and future medical expenses, for past and future lost wages and lost earnings capacity, for pain, suffering and mental anguish, for disability and for the loss of life's pleasures."  In Gebbia, we found, in the context of an analogous slip and fall personal injury case filed against a store under Louisiana law, that a complaint alleging injuries and damages in a manner similar to Pollet's complaint facially indicated that the amount in controversy exceeded $75,000 for the purpose of federal removal jurisdiction.  See 233 F.2d at 883-84 (denying remand of a slip and fall personal injury case filed under Louisiana law and removed to federal court).

The plaintiff in Gebbia, like Pollet, was prohibited by Louisiana law from specifying damages in dollar amounts in her complaint.  The Gebbia plaintiff alleged personal injury under

8

Louisiana law against a store due to an alleged slip and fall on "liquid, dirt and produce" in the store. 233 F.3d at 881. The Gebbia plaintiff also alleged injuries analogous to those claimed by Pollet, including injury to her "right wrist, left knee and patella, and upper and lower back." Id. The Gebbia plaintiff further alleged damages analogous to those alleged by Pollet, including damages for "medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement." Id. The action in Gebbia was removed to district court, and that court denied a motion to remand, finding that the complaint at the time of removal alleged injuries exceeding the $75,000 requirement. Id. at 882.

The Gebbia plaintiff subsequently made a stipulation "based on medical evidence" that her claims "did not amount to $75,000." Id. The district court denied the plaintiff's motion for reconsideration of its jurisdictional judgment, which motion was made in light of that stipulation. Id. A federal jury subsequently found in favor of the defendant. Id.

On appeal to this court, the Gebbia plaintiff claimed that the district court erred in denying her motion to remand. See id. In affirming the district court's decision not to remand, we noted that "once the district court's jurisdiction is established, subsequent events that reduce the amount in controversy to less than $75,000 generally do not divest the

9

court of diversity jurisdiction." Id. at 883 (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289-90 (1938); Allen, 63 F.3d at 1336). We further held that it was "'facially apparent'" from the Gebbia plaintiff's petition, which is analogous to that of Pollet, "that the claimed damages exceeded $75,000." Id. at 883-84. We thus found that the district court properly had diversity jurisdiction over the suit in Gebbia, despite the post-removal stipulation of damages not exceeding $75,000. Id. at 883-84.

In finding that federal jurisdiction existed in Gebbia, we distinguished another of our decisions applying Louisiana law, Simon v. Wal-Mart Stores, 193 F.3d at 851-52. In Simon, we found that a district court erred by not remanding to state court a personal injury action brought against a store because we found that the allegations made in the complaint did not indicate an amount in controversy in excess of $75,000. See id. The plaintiff's complaint in that case alleged injuries including "'but not limited to a severely injured shoulder, soft-tissue injuries throughout her body, bruises, abrasions and other injuries to be shown more fully at trial, and has incurred or will incur medical expenses.'" Id. at 850. The Simon plaintiff also "sought 'reasonable' damages for loss of consortium." Id. In rejecting federal jurisdiction in Simon, we reasoned that the plaintiff in that case failed to allege any damages such as "for loss of property, emergency transportation, hospital stays,

10

specific types of medical treatment, emotional distress, functional impairments, or disability, which damages, if alleged, would have supported a substantially larger monetary basis for federal jurisdiction." Id. at 851. In light of that finding in Simon, we therefore concluded in Gebbia that, based on the contrast between the type of allegations of injury and damages made by the Gebbia plaintiff versus the seemingly less severe allegations made by the Simon plaintiff, the Gebbia plaintiff's allegations did "support a substantially larger monetary basis to confer removal jurisdiction than the allegations reviewed in Simon ...." Gebbia, 233 F.3d at 883.

We find that Pollet's allegations of injury and damages in her complaint, by their nature and severity, more closely resemble the allegations made by the plaintiff in Gebbia than the allegations made by the plaintiff in Simon. And, as in Gebbia, we disregard Pollet's post-removal settlement demands in our determination of the amount in controversy at the time of removal. Thus, we conclude that it is facially apparent from Pollet's allegations of injury and damages made in her complaint that the amount in controversy at the time of removal more likely than not exceeded $75,000. We therefore find that the district court had diversity jurisdiction over Pollet's action pursuant to 28 U.S.C. §§ 1441(a) & 1332 when that court granted summary judgment in favor of Sears.

11

### B. Pollet's Failure to Show Sears had Constructive Knowledge of Any Hazard

We review a district court's summary judgment de novo, applying the same standards as the district court. <u>Chaney v. New Orleans Pub. Facility Mgmt., Inc.</u>, 179 F.3d 164, 167 (5th Cir. 1999). Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We view the evidence in the light most favorable to the non-movant. <u>Coleman v. Houston Indep. Sch. Dist.</u>, 113 F.3d 528, 533 (5th Cir. 1997). The non-movant must, however, go beyond the pleadings and point to specific facts in dispute indicating a genuine issue for trial. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). If the non-movant fails to present facts sufficient to support an essential element of her claim, summary judgment is appropriate. See <u>id.</u> at 322-23.

Pollet argues that, even if the district court had jurisdiction to decide summary judgment, the court nevertheless erred by granting summary judgment in favor of Sears because the court erred in finding that Pollet failed to establish as a matter of law that Sears had constructive knowledge of a hazardous condition that allegedly caused her fall. Louisiana has a merchant premises liability statute, LA. REV. STAT. ANN. § 9:2800.6 (West 1997), which governs injury claims such as Pollet's that are made against merchants. For Pollet to succeed

12

on such a claim, § 9:2800.6 requires that she prove all of the following statutory elements:

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable. (2) The merchant either created <u>or had actual or constructive notice of the condition which caused the damage, prior to the occurrence</u>. (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

LA. REV. STAT. ANN. § 9:2800.6(B) (emphasis added).

In finding in favor of Sears, the district court found that Pollet failed to point to material facts in dispute as to the second statutory element: whether Sears had constructive notice of the hazard that Pollet alleged was created by a puddle of rainwater on the store entrance floor combined with a floor mat caught in the door.[6] In so doing, the district court relied on a decision by the Louisiana Supreme Court, <u>White v. Wal-mart Stores, Inc.</u>, 97-0393 (La. 9/9/97), 699 So.2d 1081, 1082, 1084-85. In <u>White</u>, the Louisiana Supreme Court clarified that, in order for a plaintiff to satisfy the constructive notice element of her claim required by § 9:2800.6, she must establish a temporal component to constructive notice by making some showing that the hazard at issue existed for some length of time such

---

[6] Pollet does not allege that Sears had actual notice of any hazard.

13

that Sears should have become aware of the hazard by exercising due care.  See id.

In White, the Louisiana Supreme Court reversed a judgment in favor of an injured plaintiff who claimed, subject to § 9:2800.6, that a merchant had constructive notice of a "clear liquid" spilled on an aisle floor in the store in which the plaintiff slipped and fell.  Id.  The White court based its ruling on its finding that the plaintiff "produced no evidence as to how long the spill had been on the floor."  Id.  In so doing, the White court explained,

> [t]here is no bright line time period ....  Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period.  A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute.  Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition exited for some time period prior to the fall.  This is not an impossible burden.

Id.  Pollet argues that the district court incorrectly applied White to her claim because that case does not address the same circumstance presented by her claim involving a hazard resulting from rainy weather.  Since White, however, in a case involving rainy weather that is analogous to the instant case, the Louisiana Supreme Court confirmed that the requirement it outlined in White -- that an injured plaintiff must make a

14

showing as to the temporal component of the constructive notice element to satisfy § 9:2800.6 -- is to be applied equally to plaintiffs' claims against merchants that allege hazards resulting from rainy weather. See Kennedy v. Wal-Mart Stores, Inc., 98-1939 (La. 4/13/99), 733 So.2d 1188, 1189-91.

In Kennedy, a plaintiff shopping at a Wal-Mart store slipped in what appeared to be a puddle of water near the cash registers at the front of the store. Id. at 1189. At a bench trial, the plaintiff testified that it was raining the evening that he slipped and that, although the plaintiff did not see any puddle on the floor prior to falling, his pants were wet after he rose from the floor. See id. The Kennedy plaintiff further testified that the area where he fell was within view of a customer service podium so that the plaintiff thought one of the Wal-Mart employees should have been able to see any puddle before the plaintiff fell. See id. The store's defense witness testified as to routine store inspection procedures, including routine sweeping, mopping, random spot checks, and once-hourly "'zone defense'" checks by all store employees. Id. A Louisiana intermediate appellate court affirmed a trial court judgment in favor of the plaintiff.

The Louisiana Supreme Court reversed. In so doing, that court found that the Kennedy plaintiff's evidence indicated merely that the area where he fell was within view of a customer service area and that it was raining the evening the plaintiff

15

fell.  See id. at 1191.  The court further found that the "plaintiff presented absolutely no evidence as to the length of time the puddle was on the floor before his accident."  Id.  The Louisiana Supreme Court thus concluded that, under White, the "plaintiff did not carry his burden of proving Wal-Mart's constructive knowledge of the condition," as required by § 9:2800.6.  Id. (discussing White, 699 So.2d at 1084-85).  The Kennedy court then rendered judgment in favor of the defendant store.[7]

---

[7]  In support of her argument, Pollet points to three decisions by Louisiana intermediate appellate courts involving slip and fall injury claims subject to § 9:2800.6 and that alleged hazards resulting from rainy weather, particularly Oalmann v. K-Mart Corp., 630 So.2d 911, 913 (La. Ct. App. 1994). See also Hartford v. Wal-Mart Stores, Inc., 99-0753 (La. App. 1 Cir. 5/16/00), 765 So.2d 1081, 1084-87 (citing White to affirm a verdict in favor of an injured plaintiff who claimed a merchant had constructive notice of a rain puddle based on similar evidence as that in Oalmann); Barton v. Wal-Mart Stores, Inc., 97-801 (La. App. 3 Cir. 12/10/97), 704 So.2d 361, 363, 367 (same).  In Oalmann, a case that indeed appears analogous to Pollet's, a Louisiana intermediate appellate court affirmed judgment in favor of an injured plaintiff who slipped and fell and claimed that a merchant had constructive notice of a puddle of rain water on the store entrance floor.  Id.  That court found that the trial court judgment was supported by evidence that the store "did have knowledge of the weather conditions on the day of the accident."  Id.  The appellate court further found that, despite that the "evidence does not clearly establish precisely how long the floor was wet prior to [the] fall," given "the volume of business conducted at [such] a large" retailer, it was "foreseeable that the floor near the entrance would become wet, and thus slippery, in a relatively short period of time."  Id. The Oalmann court concluded that "[i]t is the opinion of the Court that the accumulation of water at the entrance existed for such a time that [the store] should have discovered the danger." Id.
  As another Louisiana intermediate appellate court pointed out in Barton, 704 So.2d at 364, the Louisiana Supreme Court in

16

A review of the facts in the instant record indicates that under Kennedy, and in accordance with White, the district court correctly determined that Pollet fails to point to sufficient facts in dispute that, if proven true at trial, could satisfy her burden of establishing the constructive notice element of her claim, as required by § 9:2800.6. Pollet testified in her deposition to the following events. At the time she entered Sears, it was raining. Prior to her fall, Pollet did not see any puddle in the store entrance or notice that a mat was caught under the door. Only upon rising from the floor did Pollet feel that her pants were wet and observe some "clear liquid" on the floor with a dark streak through it from where her own shoe had skidded. Pollet did not observe any other customers slipping in

---

White expressly referred to Oalmann as an "example[] where the claimant did carry the burden of showing actual or constructive notice." See White, 699 So.2d at 1085 & n.4 (emphasis added). In White, therefore, the Louisiana Supreme Court appeared to endorse Oalmann and to suggest that any case analogous to Oalmann -- thus arguably including Pollet's case -- would satisfy the burden of adducing sufficient evidence of the temporal component of constructive notice required by § 9:2800.6. In deciding Kennedy, the Louisiana Supreme Court did not address its earlier citation to Oalmann in footnote four of White, which endorsement arguably contradicts the later holding in Kennedy.

Regardless, when a state's highest appellate court has weighed in on an issue, we are bound by that court's holding in determining state law, and we look to intermediate appellate court decisions only in the absence of such a higher court decision. See Howe v. Scottsdale Ins. Co., 204 F.3d 624, 627 (5th Cir. 2000) (citation omitted). Because Kennedy appears squarely on point with Pollet's case, we heed the Louisiana Supreme Court's counsel in that decision in favor of a finding that Pollet fails to present sufficient evidence in dispute that Sears had constructive notice of any hazard.

17

the store entrance.  Pollet admitted that she did not report the accident until approximately fifteen to twenty minutes after it occurred, at which time Sears investigated.  In response to being asked whether she thought that Sears knew about the puddle or the mat caught in the door prior to her fall, Pollet responded, "I don't guess they knew.  I don't know.  I mean, you know, it only happened when I walked in the door."

E.J. Bizette, an asset protection manager at Sears at the time of Pollet's fall submitted an affidavit stating that Sears had no knowledge that any water or other type of hazard existed at the door Pollet entered at the time she fell.  Bizette additionally testified in a deposition that Sears's policy mandates that safety warning cones be put out during inclement weather when it begins to rain and that Sears associates must all be on constant watch for hazardous puddles and the like during such weather.  Bizette also testified that despite such policy, he could not recall for a fact that warning cones were put out the night of Pollet's accident or how long it had been since any associates had inspected the area and found it free of puddles or a mat caught under the door.  David Levia, the Sears asset protection agent who investigated the scene of Pollet's accident after she reported the incident, testified that he saw no puddle on the floor and no mat out of place.  Levia further testified that he saw no warning cones or signs by the door that night.

18

The evidence in the record suggests dispute over whether Sears followed its general procedures regarding hazards posed by inclement weather at the time Pollet fell. Evidence conflicts as to whether warning cones or signs were placed by entrance doors after the store determined it was raining, and evidence is unclear as to whether any actual inspections were undertaken to spot possible puddles due to the rain. However, the resolution of that dispute at trial -- even if in Pollet's favor -- may be relevant to the issue of due care but, according to the Louisiana Supreme Court's interpretation of § 9:2800.6 in White and Kennedy, would not establish that any hazard created by a puddle or mat caught in a door existed for some time prior to Pollet's fall. Moreover, under Kennedy and White, any evidence that it was raining, that an area in which a fall took place was visible to store personnel, and/or that Sears should have foreseen hazards created by rain puddles or misplaced door mats in a high volume store entrance because the merchant knew it was raining, is not sufficient to support a finding that Sears had constructive notice. See Kennedy, 733 So.2d at 1189 n.1, 1190-91 (citing White, 699 So.2d at 1084-85).

As at least one Louisiana appellate court recently noted, when reluctantly affirming summary judgment in favor of a merchant on a slip and fall claim analogous to Pollet's claim, "[i]t is apparent that the jurisprudence from the Louisiana Supreme Court interpreting R.S. 9:2800.6 has made it almost

19

impossible for a Plaintiff to prove the temporal element to show constructive notice of a hazardous condition in a slip and fall case, as noted by ... Justice Calogero in his dissent in White." Kimble v. Winn-Dixie La., Inc., 01-514 (La. App. 5 Cir. 10/17/02), 800 So.2d 987, 990, 992 (noting Justice Calogero's observation in White that the effect of that majority opinion is to require in every slip and fall case that a plaintiff produce an eyewitness who can testify as to the exact time that a hazard appeared) (citing White, 699 So.2d at 1087). Nevertheless, like the intermediate appellate court in Kimble, we are bound in this case by the Louisiana Supreme Court's interpretation of § 9:2800.6. See Labiche v. Legal Sec. Life Ins. Co., 31 F.3d 350, 351 (5th Cir. 1994) ("In order to determine state law, federal courts look to final decisions of the highest court of the state.") (internal quotation and citations omitted). Therefore, we conclude in accordance with the Louisiana Supreme Court's decisions in White and Kennedy, that because Pollet fails to point to evidence in dispute indicating that any alleged hazard created by the puddle and the mat existed for some time prior to her fall, Pollet fails as a matter of law to support her claim that Sears had constructive notice of a hazardous condition causing her to fall, as required by § 9:2800.6. Consequently, the district court properly granted summary judgment in favor of Sears on Pollet's claim.

## V. CONCLUSION

For the foregoing reasons, the district court's summary judgment in favor of Sears on Pollet's negligence claim is AFFIRMED.