NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**09-694**

**FREDERICK HERRING, ET AL.**

**VERSUS**

**HARTFORD CASUALTY INSURANCE COMPANY, ET AL.**

************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 225,141
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

************

**MICHAEL G. SULLIVAN**
**JUDGE**

************

Court composed of Jimmie C. Peters, Marc T. Amy, and Michael G. Sullivan, Judges.

**AFFIRMED.**

Howard N. Nugent, Jr.
Nugent Law Firm
Post Office Box 1309
Alexandria, Louisiana  71309
(318) 445-3696
Counsel for Plaintiffs/Appellants:
    Frederick Herring
    Nouchella Herring
    Shaneeq'a Herring

**Joseph H. Garbarino**
**Law Offices of Jeff R. Rytlewski**
**345 Doucet Road, Suite 104-A**
**Lafayette, Louisiana  70503**
**(337) 983-0710**
**Counsel for Defendants/Appellees:**
  **Hartford Casualty Insurance Company**
  **Subway of Alexandria, Inc.**

**SULLIVAN, Judge.**

Plaintiffs appeal a trial court judgment dismissing their claims against defendants with prejudice. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

Shaneeq'a Herring was allegedly injured on January 14, 2006, at approximately 8:24 p.m., when she slipped and fell inside a Subway restaurant (Subway) in Alexandria, Louisiana. As a result of the injuries Shaneeq'a suffered in the accident, suit was brought against Subway of Alexandria, Inc. and its insurer, Hartford Casualty Insurance Company (Hartford). Because Shaneeq'a was a minor at the time of the accident, the suit was filed on her behalf by her parents, Frederick and Nouchella[1] Herring (hereinafter collectively referred to as Plaintiffs).[2] Plaintiffs sought recovery for the damages suffered by Shaneeq'a, as well as for the loss of consortium suffered by Mr. and Mrs. Herring.

The matter was tried before a jury November 18 through November 20, 2008. Following deliberations, the jury returned a verdict form indicating that Plaintiffs did not "prove the existence of a condition which presented an unreasonable risk of harm to [Shaneeq'a] and that risk of harm was reasonably foreseeable." Polling of the jury revealed that the verdict was unanimous. Written judgment was rendered in accordance with the jury's verdict on January 7, 2009, dismissing Plaintiffs' claims with prejudice at their cost.

Plaintiffs now appeal, assigning the following errors. First, Plaintiffs claim that the jury committed manifest error in failing to find Subway at fault. Second,

---

[1]Mrs. Herring's first name is spelled differently throughout the record. For purposes of this opinion, we will spell her first name as it appears in the trial transcript.

[2]The petition was amended in November 2008 to add Shaneeq'a as a party plaintiff because she had reached the age of majority.

Plaintiffs claim that the jury committed manifest error in failing to find Subway liable for the damages suffered by Plaintiffs.

## DISCUSSION

In *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (citations omitted), the Louisiana Supreme Court set out the appellate standard of review as follows:

> [A] court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. . . . [I]f the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

The liability of a merchant for an injury sustained by a person while on the merchant's premises is governed by La.R.S. 9:2800.6, which provides, in pertinent part:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

2

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

The definition section of the statute provides that a "merchant" includes "one whose business is to sell . . . foods . . . at a fixed place of business." La.R.S. 9:2800.6(C)(2).

In *Barton v. Wal-Mart Stores, Inc.*, 97-801, pp. 4-5 (La.App. 3 Cir. 12/10/97), 704 So.2d 361, 364 (citations omitted), this court noted:

In evaluating the reasonableness of the protective measures employed by a merchant, this court has considered the following factors to be viewed in light of the circumstances present in each case: "the risk involved, the merchant's type and volume of merchandise, the type of display, the floor space used for customer service, the volume of business, the time of day, [and] the section of the premises[.]" A trial court's finding of liability for damages caused by a slip and fall accident at the defendant's place of business, as well as the presence of comparative fault, are factual determinations that will not be disturbed absent manifest error or unless clearly wrong.

"A store owner is not liable every time an accident happens." *Hardman v. Kroger Co.*, 34,250, p. 3 (La.App. 2 Cir. 12/6/00), 775 So.2d 1093, 1095. "To prevail in a slip-and-fall suit, the plaintiff must satisfy the typical tort elements of duty, breach, causation, and damages, as well as the requirements of La.R.S. 9:2800.6. . . ." *Davis v. M & E Food Mart, Inc. No. 2*, 02-585, p. 5 (La.App. 3 Cir. 10/30/02), 829 So.2d 1194, 1198. "Failure to prove any of these required elements will prove fatal to a plaintiff's claim." *Hardman*, 775 So.2d at 1095.

### Did the jury commit manifest error in failing to find Subway at fault?

Plaintiffs claim that Shaneeq'a slipped and fell because the floor in Subway was wet and argue that the jury erred in failing to find that the wet floor amounted to a reasonably foreseeable condition that presented an unreasonable risk of harm to her. They claim that the restaurant was understaffed and that its mopping procedure was

not correctly followed, thus allowing customers to traverse an area that had just been mopped without adequately warning them with appropriate signage that the floor may still be wet. Plaintiffs contend that the situation was made worse by the existence of the "large elevated billboard menu marquee [that] required the customer, who was approaching the service line position, to take their eyes off the floor and look up . . . as they walked toward the service employee who was asking for their order."

Subway counters that there was ample evidence to support the jury's finding that Plaintiffs did not prove the existence of a condition that presented a reasonably foreseeable and unreasonable risk of harm. Subway submits that Shaneeq'a's preoccupation with filling out an accident report marred her credibility. In addition, Subway avers that the testimony of Shaneeq'a and her friends appeared to be rehearsed.

Testifying at trial were all three of the Plaintiffs, the five girls who were with Shaneeq'a at Subway the night she fell, and the manager of the Subway at the time of Shaneeq'a's fall, Lori Fisher.[3] In addition, the jury was shown a video taken by a security camera located inside the Subway restaurant.

Shaneeq'a testified that she was sixteen years old at the time of the accident. She and some friends had gone to the mall to look for bridesmaid dresses, and they decided to stop at a nearby Subway to eat. She stated that, as she walked toward the counter, she was looking up at the menu at the front of the store to decide what to order, and she slipped and fell. She stated that because she was embarrassed, she initially laughed upon falling. However, when her friend, Kuneshia Harris, asked if

_____

[3]Neither of the two female employees working at Subway the night of Shaneeq'a's fall testified at trial. According to Mrs. Fisher, neither was still employed by Subway, and they could not be located.

she was okay, she replied that she was not. According to Shaneeq'a, when her friends tried to help her get up, she told them "[d]on't touch me" and asked them to call her mother. She stated that, after the group left Subway, they went to Wal-Mart, and she purchased some food to go from the Subway located in the Wal-Mart.[4]

Three of Shaneeq'a's friends testified that Shaneeq'a had been the first person in the group to enter the restaurant. Three testified that they were looking up at the menu as they entered the Subway. Only one of the girls testified as to having seen any water or dampness on the floor near where Shaneeq'a fell; four of the girls noticed wet spots on Shaneeq'a's clothing. Four of the girls stated that they had all laughed when Shaneeq'a fell until they realized that she was hurt. The testimony revealed that three of the girls worked at a local MacDonald's restaurant where Shaneeq'a's mother was a manager.

Nouchella testified that Shaneeq'a called her from the Subway on the night of the accident to tell her that she had fallen and her right shoulder was hurting. She had asked Shaneeq'a to get up off of the floor, if she was able to do so, and to have the Subway employees fill out an accident report. Nouchella stated that later that evening, she called Mrs. Fisher to discuss the accident that her daughter had suffered while in the Subway. She testified that she had spoken with Mrs. Fisher on several other occasions regarding Shaneeq'a's medicals bills and that Mrs. Fisher had told her that she did not think Subway was liable because the girls had been in the store playing.

_____

[4]Shaneeq'a went on to testify about her alleged injuries and the treatment she received for those injuries. Because we find that the jury did not err in failing to find Subway at fault for her accident, that testimony is not included herein. Likewise, this opinion does not include testimony from any of the other witnesses concerning Shaneeq'a's injuries.

Frederick testified about the phone call that he got from Shaneeq'a right after the accident. He said that his daughter sounded scared and frightened and that he could tell that she was hurting.

In contrast, Mrs. Fisher[5] testified to the following: 1) the floor tiles in the restaurant were specifically designed by Subway to have a rough, non-skid surface; 2) the cleaning agent used to mop the floor was specifically designed to be low sudsing; 3) she directed her employees to use only half a packet of cleaning agent to further reduce the slipperiness when mopping; 4) the bucket had a fill-line of about halfway up the bucket to prevent splashing when the bucket was moved; 5) the restaurant was empty when an employee began mopping at 8:00 p.m.; 6) the employee mopped an approximate 120 to 130 square feet of floor space after only dipping the mop in the bucket once and wringing it out twice; 7) multiple ceiling fans were running the entire time in question; 8) the mopping concluded eight minutes before Shaneeq'a and her friends entered the restaurant; 9) a "Wet-Floor" sign was present at the entrance of the restaurant near the area that had been mopped, rather than directly in the path of the customers because that would have presented a tripping hazard; 10) another "Wet-Floor" sign was located six to eight feet past where Shaneeq'a fell; and 11) in the six years that this location of Subway had been in operation, no one other than Shaneeq'a had ever fallen.

The security video showed that a Subway employee began mopping at 8:00 p.m. but stopped when two customers entered the restaurant. The mopping resumed at 8:10 p.m. and continued until 8:15 p.m. The area where Shaneeq'a fell was one of the last areas to be mopped. At about 8:18 p.m., a male customer entered

_____

[5]Mrs. Fisher was not present at Subway on the night Shaneeq'a fell.

the restaurant and approached the counter, taking the same path that Shaneeq'a and her friends would later take. Shaneeq'a and her friends entered at 8:23 p.m., and she fell one minute later. Shaneeq'a remained on the floor until 8:28 p.m., at which time she stood up with no obvious distress and approached the cashier area. At approximately 8:35 p.m., Shaneeq'a joined her friends in a booth. The group departed the restaurant around 9:08 p.m. No injuries to Shaneeq'a were apparent at that time.

Most tellingly, Shaneeq'a offered no explanation as to why she fell. She simply stated that after she fell, she noticed water on the bottom of her pants leg and on her hip area. She did not testify, however, that the floor was wet or slippery. On the other hand, Subway offered testimony regarding the means by which it endeavors to ensure that mopping is done in such a way as to minimize the risk of its customers slipping, including the use of non-skid floor tiles and low-sudsing mopping solution, as well as the training of its employees in proper mopping procedures. In addition, the video showed that the Subway employee mopped the restaurant in compliance with how she had been taught by Mrs. Fisher. The jury was presented with two views of the evidence, and it had to make credibility calls to determine which view it found to be most believable. Given the totality of the evidence, we cannot say that the jury's conclusion that Plaintiffs did not "prove the existence of a condition which presented an unreasonable risk of harm to [Shaneeq'a] and that risk of harm was reasonably foreseeable" was unreasonable. The jury's decision to accept Subway's version of the facts surrounding Shaneeq'a's unfortunate accident was not manifestly erroneous or clearly wrong.

7

Because we have found that the jury did not err in failing to find Subway at fault, we need not address Plaintiffs' second assignment of error.

**DECREE**

For the foregoing reasons, the judgment of the trial court dismissing the Herrings' claims against Subway of Alexandria, Inc., and its insurer, Hartford Casualty Insurance Company, is affirmed. All costs of this appeal are assessed to the Plaintiffs.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.